UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>c/o UNITED STATES DEPARTMENT<br>OF JUSTICE, 1400 NEW YORK AVENUE,<br>N.W., 10TH FLOOR, WASHINGTON,<br>D.C. 20005<br><br>      Plaintiff,<br><br>      v.<br><br>THREE SUMS TOTALING $241,386.58<br>IN SEIZED UNITED STATES CURRENCY<br><br>      Defendants *in rem.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 18-CV-750<br>)<br>)<br>)<br>)<br>)<br>) |

### VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, United States of America, by and through its undersigned attorneys, brings this verified complaint in a civil action *in rem* to condemn and forfeit the above-listed defendant property to the use and benefit of the United States of America in accordance with Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. In support of its cause, Plaintiff states and alleges as follows:

### NATURE OF THE ACTION

1. This is a civil forfeiture action against United States currency involved in and traceable to violations of the International Emergency Economic Powers Act of 1977 ("IEEPA"), 50 U.S.C. §§ 1701-1706, as well as the Money Laundering Control Act of 1986, 18 U.S.C. §§ 1956(a)(2)(A) and 1956(h). These funds are subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A), (C), and 984.

## JURISDICTION AND VENUE

2. This court has jurisdiction over an action commenced by the United States pursuant to 28 U.S.C. § 1345 and over an action for forfeiture pursuant to 28 U.S.C. § 1355(a).

3. Venue for this action is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

## DEFENDANTS *IN REM*

4. The defendants *in rem* consist of the following:

   a. $45,695.59.00 in United States currency, formerly located at Deutsche Bank Trust Company Americas, seized on or about August 21, 2017, and assigned an asset identification number ending in 4160 by the U.S. Department of Justice ("SUM A");

   b. $174,949.58 in United States currency, formerly located at Bank of New York Mellon, seized on or about August 29, 2017, and assigned an asset identification number ending in 5258 by the U.S. Department of Justice ("SUM B");

   c. $20,741.41 in United States currency, formerly located at Citibank N.A., seized on or about August 29, 2017, and assigned an asset identification number ending in 7708 by the U.S. Department of Justice ("SUM C"); and,

5. Pursuant to seizure warrants issued by this Court, these defendants *in rem* were seized in the Southern District of New York and transferred to the possession and custody of the United States Marshals Service, where they remain. In light of these seizures, the United States requests the issuance of an arrest warrant *in rem* signed by the Clerk of Court for each defendant *in rem*. See Supplemental Rule G(3)(b)(i).

6.   On or about October 19, 2017, administrative forfeiture proceedings commenced against SUM A, SUM B, and SUM C.

7.   On or about January 4, 2018, GFS Global Food Solutions, LTD, an entity with a self-reported address of 77 Strovolos Center, Floor 22, Flat 201, Nicosia 2018 Cyprus, filed a timely claim in the administrative forfeiture proceedings for SUM B, asserting an interest in the funds seized from Bank of New York Mellon by virtue of its position as the beneficiary for wire transactions initiated by originator AJC Trading FZC.

8.   On or about February 9, 2018, Dubai Islamic Bank filed a timely claim in the administrative forfeiture proceedings for SUM A, asserting an interest in the funds seized from Deutsche Bank Trust Company Americas by virtue of its position as originating bank for wire transactions initiated by account holder AJC Trading FZC.

9.   On or about February 22, 2018, Filhet Allard Maritime SAS, an entity with a self-reported address of Rue Miguel de Cervantes, 33700 Merignac, France, filed a timely claim in the administrative forfeiture proceedings for SUM C, asserting an interest in the funds seized from Citibank N.A. by virtue of its position as the originator for wire transactions intended for beneficiary AJC Trading FZC.

**BACKGROUND ON IEEPA SANCTIONS**

10.   The United States Department of the Treasury, Office of Foreign Assets Control ("OFAC"), which is located in the District of Columbia, administers and enforces economic and trade sanctions against certain foreign countries, entities, and individuals in accordance with IEEPA and associated regulations and orders, including Executive Order 13224 and the Global Terrorism Sanctions Regulations, Title 31, Code of Federal Regulations, Part 594 ("GTSR").

11. The penalties section of IEEPA, 50 U.S.C. § 1705, makes it "unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition" issued under IEEPA.

12. Following the terrorist attacks of September 11, 2001, President George W. Bush issued Executive Order 13224 pursuant to IEEPA and other statutes, declaring a national emergency with respect to the threat to the national security, foreign policy, and economy of the United States posed by grave acts of terrorism and threats of terrorism committed by foreign terrorists. *See* 66 Fed. Reg. 49079 (Sept. 23, 2001).

13. To implement Executive Order 13224, OFAC issued the GTSR, which immediately prohibited all U.S. persons and entities from engaging without a license in any transactions with, or for the benefit of, certain designated persons or entities, known as Specially Designated Global Terrorists ("SDGTs"), and immediately blocked all assets of SDGTs. 31 C.F.R. Part 594. As a result, it is illegal for any U.S. person or entity to engage in any transaction not only with a designated SDGT, but also with any undesignated third-party entity or person acting on behalf of the designated SDGT without obtaining a license from OFAC.

## SPECIFIC PERSONS AND ENTITIES DESIGNATED AS SDGTS

14. On May 27, 2009, OFAC designated Kassim Tajideen ("Tajideen") as an SDGT pursuant to IEEPA and Executive Order 13224 based on his significant financial support of the Hizballah terrorist organization. On December 9, 2010, OFAC designated his brother, Husayn Tajideen as an SDGT for the same reasons. At all times since their respective designation dates until today, both individuals have remained SDGTs.

4

15. Also on December 9, 2010, OFAC designated, among others, the following six companies as SDGTs: (1) TAJCO; (2) Congo Futur; (3) Grupo Arosfran Empreendimentos E Participacoes SARL ("Arosfran"); (4) Afri Belg Commercio E Industrial LDA ("Afri Belg"), (5) Golfrate Holdings (Angola) LDA ("Golfrate"); and (6) Ovlas Trading SA, pursuant to IEEPA and Executive Order 13224. The companies were designated after being identified as owned by, controlled by, or operated for the benefit of, the OFAC-designated Tajideen brothers. At all times since their designation date until today, all of these entities have remained SDGTs.

16. At all times relevant to this complaint, TAJCO was a multinational company owned by and for the benefit of Kassim Tajideen, Husayn Tajideen, and others. TAJCO was composed of several subsidiary and related entities, including Tajco Company Limited in Banjul, Gambia. Husayn Tajideen managed the daily operations of the company in Gambia. Other family members and employees operate the company on behalf of Kassim Tajideen and Husayn Tajideen in Lebanon, Sierra Leone, and elsewhere.

17. At all times relevant to this complaint, Congo Futur was an importer and distributer of goods based in Kinshasa, Democratic Republic of Congo ("DRC"), and operated by Tajideen family members and employees operating on Tajideen's behalf in Kinshasa, Lebanon, and elsewhere. Congo Futur was owned by and for the ultimate benefit of Tajideen and others. Congo Futur was a subsidiary of Ovlas Trading SA and conducted business from the address Boulevard Du 30 Juin No. 3642, Gombe, Kinshasa, DRC.

18. At all times relevant to this complaint, Arosfran was an importer and distributer of goods based in Luanda, Angola, and was operated by Tajideen, as well as family members and company employees operating on Tajideen's behalf, in Angola and Lebanon. Arosfran was

owned by and for the ultimate benefit of Tajideen and others. Arosfran was a sister company to Afri Belg, as well as Golfrate Holdings LDA.

19. Immediately after the designation of TAJCO as an SDGT in 2010, Husayn Tajideen changed the name of the company in Gambia from Tajco Company Limited to Grand Stores Limited.

20. On April 19, 2012, OFAC amended its SDGT designation of TAJCO to include Grand Stores as an alias of TAJCO in Gambia.

## PERSONS AND ENTITIES ACTING ON BEHALF OF AND/OR OWNED BY SDGTS

21. AJC Trading FZC is an entity based in Tema, Ghana and Dubai, United Arab Emirates owned by, controlled by, or operated for the benefit of, Kassim Tajideen and Ovlas Trading SA. Its daily operations are managed by Ali Jaber and Hussein Jaber.

22. AJC Trading FZC is part of a portfolio of Ghana-based companies and tradenames operated by Ali Jaber for the benefit of Kassim Tajideen and Ovlas Trading SA, including but not limited to:

        a. Amani Manufacturing Company Ltd
        b. Lara Mart
        c. Multi-Pac Company Ltd
        d. Ramani Distribution Co Ltd
        e. Royal Bow Company Ltd
        f. Sika Aba Ltd
        g. Silver Platter (GH) Ltd
        h. SRG Industries GH Ltd
        i. Taj Investments Ltd
        j. TT International Ltd

23. AJC Trading FZC shares resources, finances, personnel, and other interests with Ovlas Trading SA, and entities (a) through (j) listed in the preceding paragraph.

## THE INVOLVEMENT OF DEFENDANT FUNDS IN
## PROHIBITED FINANCIAL TRANSACTIONS

24. Two of the types of financial transactions prohibited by IEEPA sanctions are: (1) transactions by the SDGT (or an undesignated person or entity acting on their behalf) with a U.S. person or company without an OFAC license; and (2) transactions by the SDGT (or an undesignated person or entity acting on their behalf) with a non-U.S. person or company in U.S. dollars that are cleared through correspondent accounts at a U.S.-based financial institution without an OFAC license.

25. Correspondent banking, also known as interbank services, is a line of business at several large financial institutions whereby other banks are able to support international wire transfers for their customers in a currency that they normally do not hold on reserve. Correspondent banks in the United States facilitate these wire transfers by allowing these other banks, located exclusively overseas, to maintain accounts at the correspondent bank in the United States.

26. Correspondent banking in the United States is not exempt from the Bank Secrecy Act or the Money Laundering Control Act.

27. Citibank N.A., Bank of New York Mellon, and Deutsche Bank Trust Company Americas, are American financial institution headquartered in part in New York, New York. Citibank N.A., Bank of New York Mellon, and Deutsche Bank Trust Company Americas, provide correspondent banking in the United States in support of U.S. dollar transactions, among others.

28. SUM A, SUM B, and SUM C were each seized while involved in interbank transfers that transited through the United States. Each are currently in the custody of the U.S. Marshal Service.

SUM A

29. On or about August 21, 2017, AJC Trading FZC attempted to wire transfer SUM A from its account ending in 5801 at Dubai Islamic Bank in the United Arab Emirates to a beneficiary account number ending in 3735 at the Shanghai Pudong Development Bank in Shanghai, People's Republic of China.

30. At no time relevant to this Complaint did any related parties to the transaction involving SUM A, including but not limited to AJC Trading FZC, Shanghai Pudong Development Bank, or Dubai Islamic Bank, have the proper license from OFAC to conduct business for the benefit of Kassim Tajideen or Ovlas Trading.

31. In the normal course of the wire transaction, SUM A was transferred to Deutsche Bank Trust Company Americas in the United States, whereupon it was seized by U.S. law enforcement via a warrant issued in the District of Columbia.

32. SUM A was subsequently transferred to the custody of the U.S. Marshal Service.

SUM B

33. On or about August 29, 2017, AJC Trading FZC attempted to wire transfer SUM B from its Noor Islamic Bank account ending in 0033 in Sharjah, United Arab Emirates, to a beneficiary account number ending in 0712 at Blom Bank SAL in Limassol, Cypress.

34. At no time relevant to this Complaint did any related parties to the transaction involving SUM B, including but not limited to AJC Trading FZC, GFS Global Food Solutions LTD, Bank of New York Mellon, or Blom Bank SAL, have the proper license from OFAC to conduct business for the benefit of Kassim Tajideen or Ovlas Trading.

35. In the normal course of the wire transaction, SUM B was transferred to Bank of New York Mellon in the United States, whereupon it was stopped and sequestered by the bank's internal anti-money laundering officials for possible violations of U.S. law.

36. SUM B was subsequently seized by U.S. law enforcement via a warrant issued in the District of Columbia, and then transferred to the custody of the U.S. Marshal Service.

SUM C

37. On or about August 21, 2017, an account holder at BNP Paribas attempted to wire transfer SUM C from its account ending in 2344 to beneficiary AJC Trading FZC account ending in 3702 at Emirates Islamic Bank in the United Arab Emirates.

38. At no time relevant to this Complaint did any related parties to the transaction involving SUM C, including but not limited to AJC Trading FZC, BNP Paribas, or Emirates Islamic Bank, have the proper license from OFAC to conduct business for the benefit of Kassim Tajideen or Ovlas Trading SA.

39. In the normal course of the wire transaction, SUM C was transferred to Citibank N.A. in the United States, whereupon it was stopped and sequestered by the bank's internal anti-money laundering officials for possible violations of U.S. law.

40. SUM C was subsequently seized by U.S. law enforcement via a warrant issued in the District of Columbia, and then transferred to the custody of the U.S. Marshal Service

41. Each of the transactions above involving SUM A, SUM B, and SUM C affected interstate and foreign commerce.

## FIRST CLAIM FOR FORFEITURE

(18 U.S.C. § 981(a)(1)(C) – Property Constituting or Derived from
Proceeds Traceable to a Specified Unlawful Activity – IEEPA Violations)

42. The allegations contained in paragraphs 1 through 41 of this Verified Complaint for Forfeiture *In Rem* are incorporated by reference.

43. Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . or any offense constituting specified unlawful activity" is subject to forfeiture by the United States.

44. "Specified unlawful activity" is defined in 18 U.S.C. § 1956(c)(7) to include, among other things, offenses related to violations of the International Emergency Economic Powers Act.

45. For purposes of the civil forfeiture statutes and pursuant to 18 U.S.C. § 981(a)(2)(A), "proceeds" refers to "property of any kind obtained directly or indirectly, as a result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from this offense."

46. The defendants *in rem,* also known as SUM A, SUM B, and SUM C, are funds that constitute or are derived from proceeds traceable to specified unlawful activity, specifically violations of IEEPA. As a result, the defendants *in rem* are subject to forfeiture to the United States of America.

## SECOND CLAIM FOR FORFEITURE

(18 U.S.C. § 981(a)(1)(C) – Property Constituting or Derived from Proceeds
Traceable to a Specified Unlawful Activity –Conspiracy to Violate IEEPA)

47. The allegations contained in paragraphs 1 through 41 of this Verified Complaint for Forfeiture *In Rem* are incorporated by reference.

10

48. Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . or any offense constituting specified unlawful activity…or a conspiracy to commit such an offense" is subject to forfeiture by the United States.

49. "Specified unlawful activity" is defined in 18 U.S.C. § 1956(c)(7) to include, among other things, offenses related to violations of the International Emergency Economic Powers Act.

50. For purposes of the civil forfeiture statutes and pursuant to 18 U.S.C. § 981(a)(2)(A), "proceeds" refers to "property of any kind obtained directly or indirectly, as a result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from this offense."

51. The defendants *in rem,* also known as SUM A, SUM B, and SUM C, are funds that constitute or are derived from proceeds traceable to a conspiracy to commit specified unlawful activity, specifically a conspiracy to violate IEEPA. As a result, the defendants *in rem* are subject to forfeiture to the United States of America.

### THIRD CLAIM FOR FORFEITURE

(18 U.S.C. § 981(a)(1)(A) – Property Involved in and/or
Traceable to International Money Laundering)

52. The allegations contained in paragraphs 1 through 41 of this Verified Complaint for Forfeiture *In Rem* are incorporated by reference.

53. Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section[] 1956, 1957, or 1960 of this title, or any property traceable to such property" is subject to forfeiture by the United States.

54. Pursuant to 18 U.S.C. § 1956(a)(2)(A), a person commits money laundering if the person transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds to a place inside the United States from or through a place outside of the United States with the intent to promote the carrying on of specified unlawful activity.

55. As noted above, 18 U.S.C. § 1956(c)(7) defines "specified unlawful activity" to include, among other things, offenses related to violations of IEEPA.

56. The defendants *in rem,* also known as SUM A, SUM B, and SUM C, are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because they constitute property involved in violations of 18 U.S.C. § 1956(h) and 18 U.S.C. § 1956(a)(2)(A), or property traceable to such property, meaning *inter alia*, that SUM A, SUM B, and SUM C, constitute funds that entered the United States from outside the United States with the intent to promote the carrying on of IEEPA violations.

## **REQUEST FOR RELIEF**

WHEREFORE, the United States of America requests that Arrest Warrants *In Rem* and notice issue on the defendant property as described above; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring that the defendant property be forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

DATED this 3rd day of April, 2018.

Respectfully submitted,

DEBORAH L. CONNOR
Acting Chief
Money Laundering and Asset Recovery Section

By: _____
Joseph Palazzo, 669666
Trial Attorney, Criminal Division
US Department of Justice
1400 New York Avenue, NW
Washington, DC 20005
(202) 514-1263
joseph.palazzo@usdoj.gov

## VERIFICATION

I, Steven J. Miller, a Special Agent for the Drug Enforcement Administration, hereby verify and declare under penalty of perjury that I have read the foregoing Verified Complaint For Forfeiture *In Rem* and all exhibits and know the contents thereof, and that the matters contained in the Verified Complaint For Forfeiture *In Rem* are true to my own knowledge.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other sworn law enforcement officers, as well as my investigation of this case, along with others.

I hereby verify and declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

EXECUTED on this 3 day of April 2018.

Steven J. Miller
Special Agent
Drug Enforcement Administration