## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| _____ ) | | |
| **UNITED STATES OF AMERICA,** ) | | |
| **c/o UNITED STATES DEPARTMENT** ) | | |
| **OF JUSTICE, 1400 NEW YORK AVENUE**, ) | **CIV. NO. 18-750** (RBW) | |
| **N.W., 10TH FLOOR, WASHINGTON,** ) | | |
| **D.C. 20005** ) | | |
| ) | | |
| ) | **MEMORANDUM IN** | |
| **Plaintiff**, ) | **SUPPORT OF** | |
| ) | **MOTION FOR LEAVE** | |
| **v.** ) | **TO FILE VERIFIED** | |
| ) | **CLAIM** | |
| **THREE SUMS TOTALING $241,386.58** ) | | |
| **IN SEIZED UNITED STATES CURRENCY** ) | | |
| ) | | |
| **Defendants** *in rem*. ) | | |
| ) | | |
| _____ ) | | |

## CLAIMANT'S MEMORANDUM IN SUPPORT OF
## MOTION FOR LEAVE TO FILE VERIFIED CLAIM

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ……………………………………...……………… i

INTRODUCTION …………………………………………………………….. 1

BACKGROUND …………………………………………….…………………….. 1

    A.  The Defendant Property ……………………………………….…….…..……… 1

          1.  SUM A …………………………………………….…….…..…..….. 2

          2.  SUM B …………………………………………….…..…………… 3

          3.  SUM C ………………………………………………….………… 4

    B.  Deficient Notice ……………………………………….…………...……… 5

LEGAL AUTHORITIES ……………………………………………………...……… 5

ARGUMENT …………………………………………………………………… 8

    A.  Claimant Failed to Receive Direct Notice ………………….…………….............. 8

    B.  Claimant Was Not Aware of This Action Until After the Deadline
        for Timely Filing a Claim …………………………………………….…..……… 11

    C.  Plaintiff Encouraged Delay by Failing to Provide
        Direct Notice to Claimant …………………………………………….…...……... 13

    D.  Claimant Attempted to Notify the Government of Its Claim in the
        Defendant Property ……………………………………………….…..…….. 15

    E.  Plaintiff Would Not be Prejudiced by the Requested
        Extension of Time …………………………………………….…...……..... 16

    F.  Claimant Has Acted in Good Faith ………………….……………..……….. 17

PRAYER …………………………………………………….…..………… 19

# TABLE OF AUTHORITIES

## CASES

*Ciralsky v. CIA*, 355 F.3d 661 (D.C. Cir. 2004) …………………………………………………… 8

*Dusenbery v. United States*, 534 U.S. 161 (2002) ………………………………...……..…………. 12

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ……………..……….…… 10

*United States v. 1982 Yukon Delta Houseboat*, 774 F.2d 1432 (9th Cir. 1985) …………..… 15, 16

*United States v. $38,000 in United States Currency*, 816 F.2d 1538 (11th Cir. 1987) ………... 17

*United States v. $83,686.00*, 498 F. Supp. 2d 21 (D.D.C. 2007) …………………………. 7, 16, 18

*United States v. $100,348.00 in United States Currency*,
354 F.3d 1110 (9th Cir. 2004) ……………………………………………….….. 7, 8, 15

*United States v. $493,850.00 in United States Currency*,
518 F.3d 1159 (9th Cir. 2008) …………………………………………………..…… 17

*United States v. $1,071,251.44 of Funds Associated with Mingzheng Int'l Trading Ltd.*,
No. 17-cv-01166, 2018 WL 3941949, (D.D.C. Aug. 15, 2018) ……………..……..…. 6, 8, 9

*United States v. All Assets Held at Bank Julius Baer Co.*, 664 F. Supp. 2d 97 (D.D.C. 2009) ..… 7

*United States v. Any & All Funds on Deposit in Account No. 40187-22751518*,
No. 13-cv-00195, (D.D.C. Dec. 11, 2014) …………………………………………..…..…… 10

*United States v. Currency, in the Amount of $103,387.27*, 863 F.2d 555 (7th Cir. 1988) …..….. 16

*United States v. One (1) Mercedes 450SE*, 651 F. Supp. 351 (S.D. Fl. 1987) ……………..…….. 15

*United States v. One 1990 Mercedes Benz 300CE*, 926 F. Supp. 1 (D.D.C. 1996) …..………….. 7

*United States v. One Star Class Sloop Sailboat*, 458 F.3d 16 (1st Cir. 2006) ……..…..… 10, 11, 14

*United States v. Real Properties Located at 7215 Longboat*,
750 F.3d 968 (8th Cir. 2014) …………………………………………………….….. 10, 12, 17

*United States v. Seventeen Thousand Nine Hundred Dollars ($17,900.00) in United States Currency*, 859 F.3d 1085 (D.C. Cir. 2017) ……………………………………………….…... 6

**STATUTES**

18 U.S.C. § 983 ………………………………………………………………………………. 12

**REGULATIONS**

31 C.F.R. § 594.201 …………………………………………………………………….... 2

**RULES**

Fed. R. Civ. P. Supp. R. G …………………………………………………………..…… passim

# INTRODUCTION

Claimant AJC Trading FZC, an entity incorporated under the laws of the United Arab Emirates, is owned, controlled, and operated by two natural persons, Ali Jaber and Hussein Jaber. [Exhibit A—Operating License Certificate].  In its normal course of business, Claimant brokers sales of consumer goods—primarily foodstuffs—on behalf of its customers.

The defendant property in this action comprises three separate funds transfers seized by U.S. law enforcement in which Claimant maintains a bona fide interest.  Although Claimant was identified as a party to the transactions in wire transfer receipts and interbank ("SWIFT") payment messages, Claimant was not notified of the seizures or provided direct notice of the instant forfeiture *in rem* action.  Failure to receive notice detrimentally impacted Claimant's ability to timely file a claim in the defendant property.  As such, Claimant respectfully contends that good cause exists for this Court to grant Claimant leave to file a Verified Claim and Statement of Interest in the defendant property.

# BACKGROUND

## A.  *The Defendant Property*

The Verified Complaint states that the defendant property was seized in the Southern District of New York pursuant to an arrest warrant issued in the District of Columbia.  Compl. ¶ 5.  Further, the Verified Complaint alleges that Kassim Tajideen and/or Ovlas Trading SA ("Ovlas Trading") maintained an interest in the defendant property.  Compl. ¶ 29-41.

On May 29, 2009, Kassim Tajideen was designated by the U.S. Department of the Treasury's Office of Foreign Assets Control's ("OFAC") under Executive Order ("E.O.") 13224 for purported dealings with Hizballah.  As a result, he was placed on the Specially Designated Nationals and Blocked Persons List ("SDN List") as a Specially Designated Global Terrorist

("SDGT"). Compl. ¶ 14.  On December 9, 2010, OFAC designated Kassim Tajideen's brother, Husayn Tajideen, for purported dealings with Hizballah, as well as Ovlas Trading and several other companies under E.O. 13224 for purportedly being owned by, controlled by, or operated for the benefit of Kassim Tajideen and Husayn Tajideen.  As a result, they were also placed on the OFAC SDN List as SDGTs.  Compl. ¶ 14-15.  As a result of these designations, U.S. persons are prohibited from engaging in any transaction with Kassim Tajideen, Husayn Tajideen, and Ovlas Trading, and all property in which they maintain an interest that comes within U.S. jurisdiction is blocked.  Compl. ¶ 13; *See generally* 31 C.F.R. § 594.201.

The Verified Complaint alleges that Claimant is owned by, controlled by, or operated for the benefit of Kassim Tajideen and Ovlas Trading.  Compl. ¶ 21.  As such, the defendant property was allegedly involved in prohibited financial transactions due to the transfers being processed by U.S.-based financial institutions, and SDGTs maintaining an interest in such transfers.  *See generally* Pl.'s Compl.

1. SUM A

On or about August 21, 2017, Claimant remitted $45,692.00 in United States currency to Kenala Food Company, Ltd. ("SUM A").  [Exhibit B—SUM A Wire Transfer Receipt].  The transfer originated from Claimant's account at Dubai Islamic Bank ("DIB") and was intended for the beneficiary's account held at Shanghai Pudong Development Bank.  *Id.*; Compl. ¶ 29.  The funds were routed through a U.S. correspondent account at Deutsche Bank Trust Company Americas where they were seized.  Compl. ¶ 31.

Documents obtained from DIB indicate that the bank received notice of the administrative forfeiture proceedings against SUM A from the U.S. Drug Enforcement Agency ("DEA") and thereafter attempted to assert a claim in those proceedings.  [Exhibit C—DIB Correspondence with

DEA].  Through correspondence dated March 9, 2018, the DEA informed DIB that its claim was accepted and referred to the U.S. Attorney's Office Criminal Division.  *Id.*; Compl. ¶ 8.  Although Claimant originated the funds transfer, it did not receive a notice of seizure and learned of the administrative proceedings only from DIB.

On or about April 5, 2018, the Notice of Forfeiture Action, along with copies of the arrest warrant and Verified Complaint, were sent to DIB. [Exhibit D—DEA Notice of Forfeiture Action to DIB].  DIB forwarded the documents to Claimant on or about April 24, 2018 via email.  [Exhibit E—April 24, 2018 Email from DIB].  In doing so, however, DIB did not did not explain that the matter was no longer subject to administrative forfeiture and that the Verified Complaint had been filed on April 3, 2018.  *Id.*

As a result, Claimant believed that the documents pertained solely to the administrative proceedings.  Consequently, the instant forfeiture *in rem* action did not come to the attention of Claimant's counsel in the United Kingdom ("UK") until on or about June 7, 2018, when UK counsel was reviewing documents related to other administrative forfeiture proceedings and discovered DIB's correspondence.  Claimant at that time did not have U.S. counsel.

2. SUM B

On or about August 29, 2017, Claimant remitted $175,000.00 in United States currency to GFS Global Food Solutions Ltd. ("GFS") ("SUM B").  [Exhibit F—SUM B Wire Transfer Receipt].  The transfer originated at Noor Islamic Bank ("NIB") and was intended for the beneficiary's account held at Blom Bank S.A.L.  *Id.*; Compl. ¶ 33.  The funds were routed through a U.S. correspondent account at Bank of New York Mellon where they were seized.  Compl. ¶ 35-36.

A notice of seizure was sent to GFS on or about October 24, 2017.  [Exhibit G—DEA Notice of Seizure to GFS].  According to the Verified Complaint, GFS filed a timely claim in the administrative proceedings for SUM B on or about January 4, 2018.  Compl. ¶ 7.  Although Claimant originated the funds transfer, it did not receive a notice of seizure and only learned of the administrative proceedings from GFS.

Thereafter, Claimant, through UK counsel, attempted to assert a claim in the administrative proceedings through the submission of a claim form on February 22, 2018.  [Exhibit H—Correspondence to DEA Asserting Claims].  DEA's response (dated April 27, 2018; mailed May 1, 2018; and received by Claimant's UK counsel on May 21, 2018), however, stated that the forfeiture of SUM B had been referred to the U.S. Attorney's Office for civil proceedings.  [Exhibit I—DEA Response to SUM B Claim].  Although the response is dated April 27, 2018, it did not indicate that the Verified Complaint had been filed on April 3, 2018, nor did it provide the case style of the instant action.  *Id*.  At no time thereafter did Claimant or UK counsel receive a Notice of Forfeiture Action or copies of the Warrant of Arrest *in Rem* and Verified Complaint from the Plaintiff or the DEA.

3.  SUM C

On or about August 29, 2017, Filhet Allard Maritime SAS remitted $20,737.86 in United States currency to Claimant ("SUM C").  [Exhibit J—SUM C SWIFT Payment Message].  The transfer originated at BNP Paribas S.A. and was intended for Claimant's account held at Emirates Islamic Bank ("EIB").  *Id*.; Compl. ¶ 37.  The funds were routed through a U.S. correspondent account at Citibank N.A. where they were seized.  Compl. ¶ 39-40.  Claimant, although the intended beneficiary of the funds transfer, did not receive a notice of seizure.

As a result of not receiving a notice of seizure, Claimant mistakenly believed that SUM C was blocked by OFAC and was unaware that it was the subject of seizure. This is evidenced by a specific license application to unblock those funds filed by Claimant via OFAC's online application portal on April 10, 2018. [Exhibit K—OFAC License Application Summary]. It was not until June 7, 2018, when Claimant's UK counsel first reviewed the April 24, 2018 email correspondence from DIB, that it was discovered that SUM C was seized and subject to the instant forfeiture *in rem* proceedings.

### B. Deficient Notice

The Verified Complaint states that administrative forfeiture proceedings against the defendant property commenced on or about October 19, 2017. Compl. ¶ 6. Despite being a party with a clear interest in the defendant property, Claimant was not notified of the administrative proceedings against the defendant property. Only through communications with its bank and the beneficiaries to the transactions did Claimant later discover that SUM A and SUM B were seized and subject to administrative forfeiture proceedings. Further, Claimant mistakenly believed that SUM C was blocked by OFAC and did not realize the property had been seized until several months later.

On or about February 22, 2018, Plaintiff was made aware through the filing of a claim form for SUM B that Claimant was an interested party in the defendant property and was represented by UK counsel. The Verified Complaint was filed thereafter on April 3, 2018; however, Claimant was not provided direct notice of the instant forfeiture *in rem* action.

## LEGAL AUTHORITIES

Forfeiture actions *in rem* are generally governed by Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. *See United States v. Seventeen*

*Thousand Nine Hundred Dollars ($17,900.00) in U.S. Currency*, 859 F.3d 1085, 1087-88 (D.C. Cir. 2017); Fed. R. Civ. P. Supp. R. G.  As stated therein, to the extent Rule G does not address an issue, Supplemental Rules C and E of the Federal Rules of Civil Procedure will apply.  *Id*.; Fed. R. Civ. P. Supp. R. G(1).

A complaint filed in a forfeiture action *in rem* must be: a) verified; b) state the grounds of subject matter jurisdiction, in rem jurisdiction over the defendant property, and venue; c) describe the property with reasonable particularity; d) if the property is tangible, state its location when any seizure occurred and—if different—its location when the action is filed; e) identify the statute under which the forfeiture action is brought; and f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.  Fed. R. Civ. P. Supp. R. G(2).

Rule G mandates that the government provide direct notice of the filing of a verified complaint to potential claimants—specifically, "the government must send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government before the end of the time for filing a claim under Rule G(5)(a)(ii)(B)."  Fed. R. Civ. P. Supp. R. G(4)(b)(i); *United States v. $1,071,251.44 of Funds Associated with Mingzheng Int'l Trading Ltd*., No. 17-cv-01166, 2018 WL 3941949 at 6 (D.D.C. Aug. 15, 2018).  Rule G(4)(b)(iii) further provides, in relevant part, that "notice must be sent by means reasonably calculated to reach the potential claimant," and "may be sent to the potential claimant or to the attorney representing the potential claimant with respect to the seizure of the property or in a related investigation, administrative forfeiture proceeding, or criminal case."  However, "[a] potential claimant who had actual notice of a forfeiture action may not oppose or

seek relief from forfeiture because of the government's failure to send the required notice." Fed. R. Civ. P. Supp. R. G(4)(b)(v).

A person who asserts an interest in defendant property may contest the forfeiture by filing a claim in the court where the action is pending. Fed. R. Civ. P. Supp. R. G(5)(a)(i). Unless the court for good cause sets a different time, a claimant's interest must be timely filed in accordance with the schedule set forth in Rule G(5)(a)(ii). Fed. R. Civ. P. Supp. R. G(5)(a)(ii).

Although "courts generally expect claimants to strictly adhere to [the] requirements [of the Supplemental Rules] . . . courts may excuse some minor procedural failings so long as the underlying goals of the Supplemental Rules are not frustrated." *United States v. All Assets Held at Bank Julius Baer Co*., 664 F. Supp. 2d 97, 101-02 (D.D.C. 2009). Factors to consider include:

> [T]he time at which the claimant became aware of the seizure; whether the government encouraged the delay; the reasons proffered for the delay; whether the claimant has advised the Court and the government of [its] interest in the defendant property before the claim deadline; whether the government would be prejudiced by allowing the late filing; and whether the claimant timely petitioned for an enlargement of time.

*United States v. $83,686.00*, 498 F. Supp. 2d 21, 24 (D.D.C. 2007) (*quoting United States v. One 1990 Mercedes Benz 300CE*, 926 F. Supp. 1, 4 (D.D.C. 1996)). Other relevant factors include, "whether the claimant was properly served and whether the claimant acted in good faith." *Id*. (*citing United States v. $100,348.00 in United States Currency*, 354 F.3d 1110, 1116-17 (9th Cir. 2004)).

In sum, there is a "well-settled jurisprudential preference for the adjudication of claims on the merits rather than on the basis of formalities . . . ." *$83,686.00*, 498 F. Supp. 2d at 25 (*quoting*

*Ciralsky v. CIA*, 355 F.3d 661, 674 (D.C. Cir. 2004)).   Indeed, "a court should exercise its discretion to grant additional time in an *in rem* forfeiture action where the goals underlying the time restriction are not thwarted."  *Id.* (quoting *$100,348.00 in United States Currency*, 354 F.3d at 1116).

## ARGUMENT

Plaintiff filed the Verified Complaint on April 3, 2018; however, despite Plaintiff's awareness of Claimant's potential interest in the defendant property, direct notice was not provided to Claimant as required by Rule G.  Consequently, Claimant was unable to timely file a claim in the defendant property.  Claimant therefore respectfully contends that good cause exists to extend the applicable time in which to file Claimant's Verified Claim and Statement of Interest in the Defendant Property in this action.

### A.   *Claimant Failed to Receive Direct Notice*

Plaintiff was required to send notice of the forfeiture *in rem* action and a copy of the complaint to Claimant—a party that was identified in wire transfer receipts, SWIFT payment messages, and in the Verified Complaint itself, and thus reasonably appeared to be a potential claimant.  *$1,071,251.44 of Funds Associated with Mingzheng Int'l Trading Ltd.*, No. 17-cv-01166, 2018 WL 3941949 at 6; Fed. R. Civ. P. Supp. R. G(4)(b)(i).  Plaintiff was further required to do so through "reasonably calculated" means.  *Id.*; Fed. R. Civ. P. Supp. R. G(4)(b)(iii)(A).

Plaintiff, however, failed to provide direct notice of the forfeiture *in rem* action to Claimant, and it remains unclear what reasonable steps, if any, were taken to provide such notice.  Failure to comply with Rule G's notice requirements inherently caused a delay in Claimant's discovery of the Verified Complaint and its realization that any claim filed with this Court would be untimely.

The reasons for failure to directly notify Claimant are unclear, particularly given Plaintiff's awareness of Claimant's interest in the defendant property.  Specifically, the DEA was informed on or about February 22, 2018 of Claimant's interest in SUM B through the submission of a claim form, and which also provided Claimant's UK counsel's contact information.  [Exhibit H— Correspondence to DEA Asserting Claims].  The DEA's response dated April 27, 2018—nearly three (3) weeks after the filing of the Verified Complaint—expressly acknowledged receipt of the submission, and informed Claimant that its claim had been referred to the U.S. Attorney's Office without making mention of the instant *in rem* proceedings.  [Exhibit I—DEA Response to SUM B Claim].  Although the DEA's response did not indicate the date when the claim was forwarded to Plaintiff, both the claim form and the DEA's response occurred well before the deadline for filing a claim in this action.  *See* Fed. R. Civ. P. Supp. R. G(5)(a)(ii)(B) (where direct notice is not provided, the deadline for filing a claim is no later than sixty (60) days after the first day of publication of the action on an official internet government forfeiture site).

Nevertheless, it appears that no attempts were made to directly notify Claimant nor its UK counsel of the instant action, let alone any made through "reasonably calculated" means.  *See* *$1,071,251.44 of Funds Associated with Mingzheng Int'l Trading Ltd.*, No. 17-cv-01166, 2018 WL 3941949 at 6 (the government's attempts to provide notice were sufficient where it identified and obtained contact information for potential claimants in numerous countries based on its investigation; contacted law enforcement officials at U.S. embassies in these countries; and effected service consistent with each country's laws, including service by international package service to parties in China and the United Kingdom, and service through a Mutual Legal Assistance Treaty request to a potential claimant in Switzerland).  Had the DEA notified Claimant or UK counsel of the instant action, they could have filed a claim prior to the expiration of the deadline.

9

Further, notice by publication would not have absolved Plaintiff of its obligation to provide direct notice to Claimant in this action.  *See* Fed. R. Civ. P. Supp. R. G(4)(a)(i) (A judgement of forfeiture may be entered only where the government publishes notice of the action within a reasonable time after filing a complaint).  Specifically, "published notice [is] insufficient" because Plaintiff reasonably knew of Claimant's interest in the defendant property at the time the Verified Complaint was filed.  *United States v. Real Properties Located at 7215 Longboat*, 750 F.3d 968, 973 (8th Cir. 2014); *United States v. Any & All Funds on Deposit in Account No. 40187-22751518*, Case No. 13-cv-00195, slip op. at 3-4 (D.D.C. Dec. 11, 2014); Fed. R. Civ. P. Supp. R. G(4)(b)(i). Assuming *arguendo* that the claim form filed with the DEA for SUM B did not sufficiently inform Plaintiff of Claimant's interest in the defendant property, Plaintiff was nonetheless aware of Claimant's potential interest as evidenced by its representations in the Verified Complaint.  *7215 Longboat*, 750 F.3d at 973 (finding direct notice was required where government representations in the complaints demonstrated it knew of the potential claimants at the time forfeiture litigation commenced).

Yet, Plaintiff did not engage in *any* reasonable effort to notify Claimant, despite knowing of UK counsel and having his contact information since at least February 22, 2018 and acknowledging Claimant's interest in the defendant property in the Verified Complaint—a complaint that had already been filed.  *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 318 (1950) ("As to known present beneficiaries of known place of residence, however, notice by publication stands on a different footing . . . . Where the names and . . . addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency.").  Thus, direct notice to Claimant was required in this case. *See United States v. One Star Class Sloop Sailboat*, 458 F.3d 16, 23 (1st Cir. 2006)

10

(holding that "[w]hile every case is different and context can be all-important, this paradigm means, in general, that when the government knows or easily can ascertain the identity and whereabouts of a potential claimant, reasonableness requires the government, at a minimum, to take easily available steps in its attempt to notify the claimant.").

Based on the foregoing, Claimant respectfully contends that good cause exists to grant Claimant leave to file a Verified Claim in the defendant property as notice of this action was deficient.

> B. *Claimant Was Not Aware of This Action Until After the Deadline for Timely Filing a Claim*

Rule G provides that "actual notice" may obviate the need for direct notice to potential claimants. Fed. R. Civ. P. Supp. R. G(4)(b)(v). The totality of the circumstances, however, demonstrates that neither Claimant's knowledge of the administrative proceedings, nor the email correspondence received from DIB on April 24, 2018, are sufficient to constitute actual notice of this action. *See One Star Class Sloop Sailboat*, 458 F.3d at 22-23 (the question of whether a putative claimant received actual notice is a "case-specific inquiry" to determine whether, "given the totality of the circumstances," the government satisfied its obligation to provide sufficient notice).

The fact that Claimant was indirectly aware of the administrative forfeiture proceedings—through communications with its bank and other parties to the transactions—does not impute actual notice that the instant forfeiture *in rem* action had commenced. Indeed, "a claimant's knowledge of a seizure—without more—is insufficient to defeat a challenge premised on an absence of actual notice. In such situations, due process entails advance notice-in-fact of forfeiture proceedings, as opposed to notice-in-fact of seizure." *One Star Class Sloop Sailboat*, 458 F.3d at 22. Rather, "actual notice" generally means "receipt of notice," which in the forfeiture context

includes "a deadline for filing a claim." *7215 Longboat*, 750 F.3d at 973 (*relying upon Dusenbery v. United States*, 534 U.S. 161, 169 n.5 (2002)); Fed. R. Civ. P. Supp. R. G(4)(b)(ii).

Here, the administrative proceedings did not provide Claimant with notice that the Verified Complaint was filed on April 3, 2018, and therefore failed to provide actual notice to Claimant of the deadline for timely filing a claim. Indeed, these proceedings are independent of one another, each requiring potential claimants to assert claims through different means and in accordance with different deadlines. *See generally* 18 U.S.C. § 983; *see also 7215 Longboat*, 750 F.3d at 972 (noting the distinction between 18 U.S.C. § 983 and Rule G).

Further, the correspondence received from the DEA in the administrative proceedings, dated after the Verified Complaint was filed, also failed to impart actual notice, as it was devoid of any reference to the Verified Complaint, this action, or any deadline for filing a claim. [Exhibit I—DEA Response to SUM B Claim]. Thus, it was not until on or about June 7, 2018, after the deadline for filing a timely claim, when Claimant's UK counsel happened upon email correspondence from DIB—which was dated April 24, 2018, and included copies of the Notice of Forfeiture, the Warrant of Arrest *In Rem*, and the Verified Complaint—that Claimant became aware of these proceedings.

In the same vein, DIB's April 24, 2018 correspondence does not constitute actual notice, as Claimant wholly failed to understand the significance of its contents. Indeed, the email was sent to general email addresses associated with Claimant (info@ajctrade.com and gm@ajctrade.com). *Id*. Thus, although the body of the email was addressed to "Mr. Ali/Ms. Amani," the email itself was not sent to these employees directly and it is therefore unclear which of Claimant's employees initially reviewed the correspondence.

Further, on or about February 9, 2018, DIB had timely filed a claim in the administrative forfeiture proceedings for SUM A. Compl. ¶ 8. Beforehand, DIB had informed Claimant of its intention to file that claim. Thus, the April 24, 2018 email from DIB, which referred to "earlier correspondence on payment held with the DEA"—meaning the administrative proceedings— could reasonably be interpreted to mean that the attachments related to those proceedings. [Exhibit E—April 24, 2018 Email from DIB]. It also bears noting that the filing deadline referenced in the email—May 12, 2018—was calculated incorrectly, further supporting a finding that the email does not constitute actual notice to Claimant of this action.[1] *Id.*

These circumstances delayed notice of this action until on or about June 7, 2018, after the deadline for timely filing a claim, when UK counsel learned of these proceedings. It was also at this time that UK counsel realized that the defendant property in this action included SUM B and SUM C—as the lack of information in the DEA's April 27, 2018 response to the claim form submitted for SUM B provided no indication of the April 3, 2018 Verified Complaint.

It is therefore clear that Claimant did not have actual notice of the instant forfeiture *in rem* action until June 7, 2018, and the totality of the circumstances weigh in favor of finding good cause to extend the deadline for filing a claim in the defendant property.

### C. Plaintiff Encouraged Delay by Failing to Provide Direct Notice to Claimant

The underlying circumstances of this case suggest that Plaintiff encouraged the delay in Claimant's timely filing of a verified claim. First, direct notice was not provided notwithstanding the clear identification of Claimant in transaction details related to the defendant property. Additionally, the DEA's April 27, 2018 response, although stating that Claimant's claim in SUM

---

[1] The Notice of Forfeiture, dated April 5, 2018, informed DIB that it must file a claim within thirty-five (35) days of the date of the notice—i.e., May 10, 2018. This suggests that even if Claimant understood the email correspondence to constitute notice of the forfeiture *in rem* action, it nonetheless may have filed an untimely claim based on the incorrect filing deadline noted by DIB.

B had been referred to the U.S. Attorney's Office, failed to provide a case number for this action or otherwise indicate that the Verified Complaint had been filed on April 3, 2018.  Finally, after receiving the referral of the claim form for SUM B from the DEA—which clearly identified Claimant's interest in SUM B and UK counsel's contact information, and which was received prior to the deadline for filing a claim—Plaintiff failed to directly notify Claimant of the instant forfeiture *in rem* action or engage in reasonably calculated means to do so.

Claimant is reasonably identifiable as a potential claimant in the defendant property as the originating party of SUM A and SUM B, and as the intended beneficiary of SUM C.  This information is clearly set forth in the originating wire transfer receipts, as well as SWIFT payment messages, and is acknowledged in the Verified Complaint.  Compl. ¶ 29, 33, and 37.  Yet, for reasons unknown, Claimant was not provided with notices of seizure for the defendant property in the administrative proceedings.

Assuming *arguendo* that an address for Claimant could not be obtained, Plaintiff nonetheless became aware of Claimant's interest in the defendant property when its February 22, 2018 claim form was referred to Plaintiff by the DEA.  Furthermore, the April 27, 2018 responses sent to Claimant's UK counsel show that the DEA knew how to contact Claimant, and that information was presumably referred to Plaintiff through the claim form that was filed.  However, rather than engage in reasonable efforts as required by Rule G to notify Claimant of the instant action, Plaintiff "buried its head in the sand."  *One Star Class Sloop Sailboat*, 458 F.3d at 25. Indeed, "when the claimant's identity may be easily ascertained through minimal effort, the government cannot eschew these efforts"—which is what occurred here. *Id*.

Plaintiff's actions therefore indicate that its failure to provide requisite notice of this action encouraged a delay in Claimant's timely filing of a verified claim in the defendant property.

Accordingly, Claimant respectfully contends that it should not be foreclosed from asserting its claim in the defendant property.

    *D.  Claimant Attempted to Notify the Government of Its Claim in the Defendant Property*

    Notwithstanding the lack of direct notice in the administrative proceedings, Claimant attempted to notify the DEA of its interest in the defendant property as early as February 22, 2018, when Claimant's UK counsel filed a claim form for SUM B.  At the time of filing, UK counsel was unaware that SUM A and SUM C were also subject to seizure, otherwise UK counsel would also have asserted claims to them on Claimant's behalf.

    The efforts undertaken by UK counsel in the February 22, 2018 filings—which in addition to SUM B included several other seizures—speak specifically to Claimant's attempt to notify the government of its interest in seized property where Claimant was a named originator or beneficiary.  Indeed, UK counsel diligently sought to assert Claimant's interest in all claims known to UK counsel at that time.  [Exhibit L—UK Counsel February 22, 2018 Cover Letter].

    Assuming *arguendo* that Claimant did not sufficiently notify the government of its claims in SUM A and SUM C, the notice received by the government with respect to SUM B should have been sufficient to direct notice of the Verified Complaint—which seeks forfeiture of SUM B—to Claimant or Claimant's UK counsel.  Although notice to the government may have been "imperfectly fulfilled" as it did not reference SUM A or SUM C, it nonetheless achieved the overall "purpose of . . . com[ing] forward as soon as possible to achieve speedy resolution of the dispute." *United States v. One (1) Mercedes 450SE*, 651 F. Supp. 351, 354 (S.D. Fl. 1987) (*relying upon United States v. 1982 Yukon Delta Houseboat*, 774 F.2d 1432, 1436 (9th Cir. 1985)).  However, the government's responsive action, or lack thereof, blatantly disregarded Claimant's attempts to notify the government of its interest in the defendant property.

Moreover, Claimant's filing of a license application seeking to unblock funds also demonstrates Claimant's attempts to assert its interest in the defendant property. [Exhibit K— OFAC License Application Summary]. Although that action was prompted by a misconception that the funds were blocked— due to lack of notice as to the seizure—Claimant's action to engage OFAC nonetheless indicates that Claimant undertook reasonable efforts to notify the government of its interest in the defendant property.

In view of Claimant's clear attempts to inform the government of its interest in the defendant property, good cause exists to allow Claimant to file a claim in the defendant property in this action.

### E.   Plaintiff Would Not be Prejudiced by the Requested Extension of Time

Plaintiff would not be prejudiced should this Court grant Claimant's Motion for Leave to File its Verified Claim.  As addressed above, Plaintiff was previously made aware of Claimant's interest in the defendant property through Claimant's filing of a claim form for SUM B on or about February 22, 2018.  With this knowledge, Plaintiff could reasonably discern that Claimant would likewise assert claims in SUM A and SUM C, and more pointedly, contest the collective forfeiture of the defendant property in administrative and/or judicial proceedings.  Indeed, "where the putative claimants have placed . . . the government on notice of their interest in the property and their intent to contest the forfeiture, courts will grant extensions of time, recognizing both the good faith effort put forth and the lack of prejudice to the government under such circumstances." *United States v. Currency, in the Amount of $103,387.27*, 863 F.2d 555, 562 (7th Cir. 1988); *see also $83,686.00*, 498 F. Supp. 2d at 24-25 (any defenses of substantial prejudice to the government for would not be credible where claimant had no notice of the civil action and engaged in good faith efforts to file a claim); *1982 Yukon Delta Houseboat*, 774 F.2d at 1436 (" . . . [w]here a claimant

has made known to the government . . . his interest in the subject property before the deadline set for the filing of a proper claim has passed, the policy interest underlying the requirement of a timely verified claim would not be injured by allowing the claimant to perfect his claim . . . .").

Conversely, Claimant would be substantially prejudiced if refused leave to assert its claim in the defendant property, as Claimant could permanently lose its interest in the property should judgment be granted in favor of Plaintiff and/or another claimant. *See 7215 Longboat*, 750 F.3d at 974 (noting that "forfeitures are not favored in the law," and "are strictly construed against the government" (*quoting United States v. $493,850.00 in United States Currency*, 518 F.3d 1159, 1169 (9th Cir. 2008); *United States v. $38,000 in United States Currency*, 816 F.2d 1538, 1547 (11th Cir. 1987))). In light of these considerations, it is Claimant's position that the assertion of its interest in the defendant property would not substantially impact Plaintiff's posture in this action or unduly prejudice Plaintiff. Therefore, Claimant's request for leave to file its claim should be granted.

### F.   Claimant Has Acted in Good Faith

As described throughout, the failure to provide Claimant with requisite notice caused Claimant to piece together the information and appropriate steps necessary to assert its claims in the defendant property. To navigate these issues, Claimant retained UK counsel who, upon discovering the instant action, determined that U.S. counsel should also be engaged. More specifically, in the months leading up to June 7, 2018, UK counsel was operating under the belief that Claimant's seized funds were either subject to administrative forfeiture and/or blocked by OFAC. Thus, UK counsel focused its efforts on asserting claims administratively. Upon discovering that the defendant property was subject to the instant forfeiture *in rem* action, however, UK counsel immediately realized that engaging U.S. counsel would be necessary to advise on how

17

to proceed in this action.  UK counsel acted diligently to engage and apprise undersigned counsel of the administrative and *in rem* proceedings, including traveling to the United States to meet with undersigned counsel in late June 2018 and gathering and providing relevant documents. Accordingly, the instant motion is being filed as soon as possible following a review of the underlying transactions and proceedings thus far, and in a concerted effort to have Claimant's interest be heard and resolved without delay.  *See $83,686.00*, 498 F. Supp. 2d at 25.

It also bears noting that the defendant property represents three (3) of approximately seven (7) funds transfers involving Claimant as originator or beneficiary that were seized and/or blocked around the same time period.  Claimant was simply overwhelmed trying to determine how to move forward in each instance, particularly given that some transactions were thought to be seized by the DEA whereas others were believed to be blocked by OFAC.  Further, Claimant is a foreign person unfamiliar with the procedures for forfeiture and blocking actions and did not receive notices of seizure informing it how to proceed in the administrative proceedings, or of the potential for subsequent civil proceedings.  These circumstances all demonstrably and adversely delayed Claimant's responses.

Collectively, Claimant's responsive efforts evidence its good faith attempts to assert its claims in the defendant property, both administratively and through the instant Motion to Extend Time and for Leave.  Claimant therefore respectfully contends that this case is precisely the type where adjudication of the claims should focus squarely on "the merits rather than on the basis of formalities," and that this Court should exercise its discretion to grant additional time for Claimant to assert its claim.  *$83,686.00*, 498 F. Supp. 2d at 25.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Claimant respectfully Moves to Extend Time and for Leave to file a Verified Claim and Statement of Interest in the Defendant Property.

Dated: September 27, 2018

Respectfully submitted,

/s/ Erich C. Ferrari, Esq.

Erich C. Ferrari, Esq.
Ferrari & Associates, P.C.
1455 Pennsylvania Ave., NW
Suite 400
Washington, D.C. 20004
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email: ferrari@falawpc.com
DC Bar No. 978253

*Attorney for Claimant*
*AJC Trading FZC*