# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| **UNITED STATES OF AMERICA,** ) | |
| **c/o UNITED STATES DEPARTMENT** ) | |
| **OF JUSTICE, 1400 NEW YORK AVENUE**, ) | **CIV. NO. 18-750 (RBW)** |
| **N.W., 10TH FLOOR, WASHINGTON,** ) | |
| **D.C. 20005** ) | |
| ) | **REPLY TO** |
| ) | **GOVERNMENT'S** |
| **Government**, ) | **OPPOSITION TO** |
| ) | **CLAIMANT'S MOTION** |
| v. ) | **FOR LEAVE TO FILE** |
| ) | **VERIFIED CLAIM** |
| **THREE SUMS TOTALING $241,386.58** ) | |
| **IN SEIZED UNITED STATES CURRENCY** ) | |
| ) | |
| **Defendants _in rem._** ) | |
| ) | |
| _____ ) | |

## CLAIMANT AJC TRADING FZC's REPLY TO GOVERNMENT'S OPPOSITION TO CLAIMANT'S MOTION TO EXTEND TIME AND FOR LEAVE TO FILE VERIFIED CLAIM

Claimant AJC Trading FZC ("AJC"), by and through undersigned counsel, respectfully files this Reply to Government's Opposition to Claimant's Motion to Extend Time and For Leave to File a Verified Claim (hereinafter, "the Opposition"), that also is in further support of that Motion.

## INTRODUCTION

In an attempt to prevent this matter from being decided on its merits, the Government asks the Court to take the strictest possible interpretation of Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Fed. R. Civ. P. Supp. R. A-G. Following the Government's unsupported interpretation of Rule G, however, would undermine the canon of jurisprudential preference for the adjudication of claims on the merits, rather than on the basis of formalities. *Ciralsky v. CIA*, 355 F.3d 661, 674 (D.C. Cir. 2004).

This Court has the authority to exercise its discretion to excuse what, at most, amount to minor procedural failings so that this matter may be decided on its merits. Indeed, precedent from this Circuit concerning the balancing of such discretionary factors relied upon in similar cases clearly tilts in favor of Claimant. Accordingly, Claimant respectfully requests that it be granted leave to file a Verified Claim so that this matter can be decided on its merits.

## DISCUSSION

### I.  Actual Notice Does Not Bar Claimant From Filing a Verified Claim

The Government asserts that "[i]t is well established law that 'a potential claimant who had actual notice of a forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice.'" *Government's Opposition*, Dkt. 6-1, at 4. The Government, however, fails to cite any case that has interpreted Supplemental Rule G(4)(b)(v) as an absolute bar to Claimant's filing of a Verified Claim. Indeed, in all of the cases cited by the Government, claimants are seeking to dismiss a verified complaint, defend against a motion to strike their claim, or seek relief from or oppose default judgment based on grounds of insufficient notice.

For example, the Government's rely on *United States v. One 2011 Porsche Panamera*, a case in which a timely verified claim asserting claimants' rights to the defendant property had already been filed. *United States v. One 2011 Porsche Panamera*, No. 16-6086, 2 (6th Cir. 2017). In that case, claimants appealed the district court decision to—upon the Government's motion—strike their claims for failure to file a timely answer to the Complaint and grant default judgment to the Government. *Id.*  In that matter, the Sixth Circuit held that Supplemental Rule G(4)(b)(v) barred claimants from appealing the judgement based on insufficient process; not from filing a claim with respect to defendant property. *Id.* at 4-5.  In other words, the Sixth Circuit in *One 2011 Porsche Panamera* prevented arguments of insufficient process from *providing relief* from the forfeiture where claimants had actual notice.  Likewise, none of the other cases cited by the Government address whether actual notice is an absolute bar to late filing of a verified claim in defendant property. *See United States v. One Star Class Sloop Sailboat*, 458 F.3d 16, 21 (1st Cir. 2006); *United States v. 1988 BMW, VIN # WBAGC8311J2767674*798, F. Supp. 2d at 900-901; *United States v. One Piece of Real Property Located at 15010 S.W. 168th Street*, 2008 WL 659472, *2.

In the instant matter, Claimant is seeking leave to file a claim to the defendant property. Without filing a verified claim, Claimant cannot "…oppose or seek relief from forfeiture…" as contemplated by in Supplement Rule G(4)(b)(v), as such claim is a necessary step preceding any effort to oppose or seek relief from a forfeiture action. *United States v. One 2011 Porsche Panamera*, No. 16-6086, 4-5 (6th Cir. 2017).  Thus, the Government is conflating the filing of a claim with responding to the forfeiture complaint itself.  While the latter may permit the application of Supplemental Rule G(4)(b)(v), the former does not.

Had Claimant sought to excuse an untimely filing of an answer or seek to overturn a default judgement by asserting that process was insufficient, then the Government's reliance on Rule G(4)(b)(v) may be appropriate.  Here, however, Claimant has made no such opposition, sought no such dismissal, nor is seeking relief from judgement on such grounds.  Rather, Claimant is merely seeking to assert a claim to defendant property and has raised deficiencies in the service of process—including a lack of direct or actual notice—to explain why its claim was untimely. Accordingly, the Government's reliance on Supplemental Rule G(4)(b)(v) as an absolute bar to filing an untimely verified claim is misplaced, and Claimant's motion should not be denied on such grounds.

## II.   Claimant Did Not Receive Actual or Direct Notice of Forfeiture

Assuming *arguendo* that the notice provisions of Supplemental Rule G(4)(b) are applicable to Claimant's Motion for Leave to File a Verified Claim, Claimant still did not receive actual or direct notice.  First, the question of whether a putative claimant received actual notice is a "case-specific inquiry" to determine whether "given the totality of the circumstances," the government satisfied its obligation to provide sufficient notice before effecting forfeiture. *United States v. One Star Class Sloop Sailboat*, 458 F.3d 16, 21-23 (1st Cir. 2006) ("…an inquiring court must look beyond [claimant's] knowledge of the seizure and consider, whether, given the totality of the circumstances, [the Government's efforts] satisfied [its] obligation to provide [claimant] with some constitutionally sufficient notice").  The totality of the circumstances of this case do not support a finding that correspondence received by Claimant from Dubai Islamic Bank was sufficient to impute direct or actual notice of this action.

Providing "…actual notice to the [claimants] on the basis of a communication to the government by an attorney who…did not represent [claimants] would work a serious injustice and

raise troubling constitutional concerns." *United States v. Real Properties Located at 7215 Longboat Dr.*, 750 F.3d 968, 975 (8th Cir. 2014) (referencing *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)).   Similarly, to impute actual notice based on email correspondence from a third party—Dubai Islamic Bank—who was not an agent or proxy of Claimant would work the same kind of serious injustice.

Government also failed to provide direct notice to Claimant by "reasonably calculated" means. Fed. R. Civ. P. Supp. R. G(4)(b)(iii)(A).   While the Government asserts that it is not required to notify counsel of a potential claimant of a pending forfeiture action, in other cases where a potential claimant was located in a foreign jurisdiction, the Government satisfied the direct notice requirement by tailored means including contacting law enforcement at a U.S. embassy to effectuate service consistent with a country's laws, *and* contacting counsel for the potential claimant. *See e.g. United States v. $1,071,251.44 of Funds Associates with Mingzheng Int'l Trading Ltd.*, No. 17-cv-01166 (KBJ) (D.D.C. Aug. 15, 2018); *United States v. Real Property Known as 200 Acres of Land*, 773 F.3d 654 (5th Cir. 2014); *United States v. $13,711.26 Seized from Account 1794,* Civil Action No. 12-cv-03113-MSK-BNB.

Here, the Government's efforts in providing direct notice were solely limited to publication on the forfeiture.gov website and delivery through a commercial carrier (Federal Express) to Claimant's addresses in the United Arab Emirates and Ghana.  *Government's Opposition*, Dkt. 6-1, at 2 and Dkt. 6-3.  When the Federal Express deliveries failed, however, the Government made no attempt to contact the U.S. embassies in those countries to assist in effecting service, or to contact Claimant's UK counsel who was known to the DEA. *Claimant's Memorandum in Support*, Dkt. 5-1, at 15.

Finally, the Government makes a vague conclusory allegation that Kassim Tajideen—who the Government alleges Claimant is owned or controlled by or operated for the benefit of—certainly had knowledge of the pending forfeiture. *Government's Opposition*, Dkt. 6-1, at 4. The Government offers no explanation or facts to support how Mr. Tajideen—who has been in U.S. custody since March 19, 2017[1]—was aware of the pending forfeiture or how he communicated his purported knowledge of the forfeiture to Claimant from his prison cell in the United States. As Claimant has previously noted, despite the Government's allegations, they are owned by two natural persons—neither of whom is sanctioned—and they are not operated for the benefit of Mr. Tajideen. *Claimant's Memorandum in Support*, Dkt. 5-1, at 1. As has been previously represented, Claimant was not aware of the pending forfeiture proceedings until June 7, 2018, notwithstanding any notice of the proceedings the Government believes Mr. Tajideen may have had. *Id*. at 3.

Accordingly, the Government's failure to provide either direct or actual notice to Claimant of the pending forfeiture matter should be considered in determining whether or not Claimant should be provided leave to assert its claim to the defendant property.

## III. Claimant's Untimely Claim Should Not Prevent Consideration of the Matter on its Merits

The Government selectively quotes from this Court's reasoning in *United States v. $83,686.00 in United States Currency Seized From SunTrust Account No. 1000018120112*, 498 F. Supp. 2d 21, 24 (D.D.C. 2007), to argue that "…adherence to the time period set forth for the filing of a verified statement of interest is generally strictly enforced." *Government's Opposition*, Dkt. 6-1, at 3. However, the Government ignores that this Court also found that "…certain discretionary factors should be considered in determining whether an untimely claim should constitute an

---

[1] PRESS RELEASE, U.S. Dep't of Justice, *Lebanese Businessman Tied to Hizballah Arrested for Violating IEEPA and Defrauding the U.S. Government*, available at https://www.justice.gov/usao-dc/pr/lebanese-businessman-tied-hizballah-arrested-violating-ieepa-and-defrauding-us-government (last accessed October 18, 2018).

absolute bar to a claimant's ability to contest a forfeiture in a particular case." *United States v. $83,686.00,* 498 F. Supp. 2d at 24; *See also United States v. Any & All Funds on Deposit in Account No. 40187-22751518*, Case No. 13-cv-00195 (D.D.C. 2014); *All Assets Held at Bank Julius Baer & Co.*, 664 F. Supp. 2d 97, 102-103 (D.D.C. 2009); *United States v. One 1990 Mercedes Benz 300CE*, 926 F. Supp.1,4 (D.D.C. 1996).

Those discretionary factors include: 1) the time at which the claimant became aware of the seizure; 2) whether the government encouraged the delay; 3) the reasons proffered for the delay; 4) whether the claimant has advised the Court and the government of its interest in the defendant property before the claim deadline; 5) whether the government would be prejudiced by allowing the late filing; and, 6) whether the claimant timely petitioned for an enlargement of time. *Id.*  This Court has also noted a survey by the Ninth Circuit of other relevant factors by various circuit court rulings on the subject, which include, "*inter alia,* whether the claimant was properly served and whether the claimant acted in good faith." *Id.* (citing *United States v. $100,348.00 in U.S. Currency*, 354 F.3d 1110, 1118 (9th Cir. 2004)).   Analysis of these factors establishes that Claimant's Motion should be granted in order to permit Claimant's claim to be adjudicated on the merits.

First, Claimant did not have actual knowledge of the April 3, 2018 Verified Complaint and believed that SUMs A and B were subject to administrative forfeiture proceedings, while SUM C was subject to an OFAC's blocking action—for which Claimant had submitted an unblocking application on April 10, 2018. *Claimant's Memorandum in Support*, Dkt. 5-1, at 2-5.  Although Claimant's UK counsel was known to the DEA during the course of the administrative proceedings, and had corresponded with such counsel, nobody bothered to contact UK counsel

regarding these proceedings. *Id.* at 9.  Nor did they contact him regarding the status of SUM C (*i.e.* that it was not blocked by OFAC). *Id.*

While the Government claims that UK Counsel received the DEA's April 27, 2018 response to Claimant's claim in SUM B, that response was not received until May 21, 2018. *Id.* at 4.  Moreover, that response did not indicate that a Verified Complaint had been filed on April 3, 2018. *Id.*  Indeed, it was not until UK counsel was reviewing documents on June 7, 2018 related to the administrative seizure proceedings that he became aware of DIB's April 24, 2018 correspondence. *Id.*  Thereafter, in late June 2018 UK Counsel met with U.S. counsel regarding these proceedings and retained undersigned counsel on July 8, 2018.  Within approximately 60-days undersigned counsel investigated the matter, drafted the Motion to Extend Time and for Leave to File a Verified Claim, and reached out to the Government.[2]

Accordingly, the Government encouraged the delay in this matter, because it did not correspond with AJC's UK Counsel—whom it knew to be representing Claimant—and undertook no tailored means to notify Claimant of the instant proceedings.

Second, while the Government argues that Claimant has "completely failed to explain why it waited over 100 days after supposedly learning of the judicial forfeiture on June 7, 2018, to file this Motion," or why it did not "acted diligently" since that time, Claimant's Motion did in fact set proffer reasons for the delay.  *Government's Opposition*, Dkt. 6-1, at 8.  For example, UK counsel searched for and found U.S. counsel to represent Claimant in the *in rem* proceedings. *Claimant's Memorandum in Support*, Dkt. 5-1, at 17-18.  This required traveling to the U.S. to meet with

---

[2] Undersigned counsel reached out to Government's counsel on September 4, 2018 to obtain their position on that motion.  Receiving no response, undersigned counsel followed up with counsel for the Government again one week later. At that time, September 12, 2018, counsel for the Government said that he would get back to undersigned counsel with their position. However, after two additional weeks passing and multiple follow-up requests to Government's counsel, Claimant was forced to file its motion without Government's position on it.

undersigned counsel in late June 2018 and gathering and providing relevant documents for undersigned counsel's review. *Id.* Undersigned counsel was retained a few weeks later and had to investigate the matter to determine if there was indeed both a verifiable claim, as well as any good-faith excuse for missing the deadline. *Id.* Such investigation required gathering and reviewing documents and corresponding with parties all over the world and different time zones.

Moreover, the Government relies on *United States v. $40,000 in U.S. Currency*, 2018 WL 3729503, at 3 (S.D.Cal. Aug. 6, 2018) to support the proposition that Claimant's claim should be refused for failure to explain the reason for its delay in asserting the claim. *Government's Opposition*, Dkt. 6-1, at 8; *United States v. $40,000 in U.S. Currency*, 2018 WL 3729503, at 3 (S.D.Cal. Aug. 6, 2018). However, in that case claimant filed an untimely answer without ever filing a verified claim or requesting additional time to file a verified claim, which was part of the reason for the court striking the claim and allowed the Government to proceed with the filing of a new motion for default judgement. *Id.* at 2-3. However, in the instant matter, Claimant is exactly doing what claimant in that case did not—asking for additional time to file a verified claim and filing that claim.

Further, the Government was already apprised of Claimant's interest in defendant property prior to the filing of the claim, as it had been advised by DIB of Claimant's interest in SUM A on or about February 9, 2018 through DIB's asserted claim. *Claimant's Memorandum in Support*, Dkt. 5-1, at 13. Similarly, in regard to SUM B, the Government was directly made aware of Claimant's interest in SUM B through its UK counsel's filing of a February 22, 2018 administrative claim on behalf of Claimant. *Id.* at 14. Finally, the U.S. Government was also generally aware of Claimant's interest in SUM C prior to the claim deadline by virtue of Claimant's April 10, 2018 unblocking application filed with OFAC. *Id.* at 5.

Thus, while the Court was not aware of Claimant's claim until September 27, 2018, the Government certainly was. Accordingly, granting the instant motion would be consistent with the discretionary factors considered by this Court and others in granting extensions of time for filing an untimely claim. *See United States v. Currency, in the Amount of $103,387.27*, 863 F.2d 555, 562 (7th Cir. 1988) (finding that where a putative claimant has placed the government on notice of its interest in the property and their intent to contest the forfeiture, courts will grant extensions of time); *United States v. 1982 Yukon Delta Houseboat*, 774 F.2d 1432, 1436 (9th Cir. 1985) (finding that where a claimant has made known to the government his interest in the subject property before the deadline set for the filing of a proper claim has passed, the policy interest underlying the requirement of a timely verified claim would not be injured by allowing the claimant to perfect his claim).

Third, the Government offers no support for its claim that it would be prejudiced by Claimant's late filing because its "Verified Complaint has been docketed for a substantial period of time." *Government's Opposition*, Dkt. 6-1, at 9. If docketing of this case was in fact an issue, the Government could have moved for default judgment after the purported judicial forfeiture claim deadline passed. However, until Claimant's Motion was filed, the Government had not moved against the defendant property or expended any other resources regarding this matter. Furthermore, the Government has not identified any associated costs being absorbed as a result of its seizure of SUMs A, B, and C, or the pendency of the litigation. *See United States v. One 1990 Mercedes Benz 300CE*, 926 F. Supp. at 5 (finding that as a result of claimant's failure to file a verified claim, the length and cost of litigation has increased for the Government).

While the Government cites *United States v. $22,226.25 in Interbank FX Account No. xxx017,* to support its claim that prejudice has been caused by the case being "docketed for a

10

substantial period of time," the docket time at issue in that case—where the claimant failed to file an answer to the complaint—was eight (8) months. *United States v. $22,226.25 in Interbank FX Account No. xxx017,* 763 F. Supp. 2d 944, 949 (E.D. Tenn. 2011). Here, Claimant became aware of the instant proceedings on June 7, 2018. *Claimant's Memorandum in Support*, Dkt. 5-1, at 3. Thus, only approximately three (3) months passed between Claimant becoming aware of the matter and the initial contact with the Government, and only four (4) months passed since the expiration of the original deadline for filing a claim and such contact. Thus, at most, the delay at issue in this case is half of what was at issue in *$22,226.25 in Interbank FX Account No. xxx017. See also $83,686.00*, 498 F. Supp. 2d at 22 (denying Government's motion to strike claimant's verified claim where the verified complaint was filed on April 30, 2004 and the claim was filed on August 12, 2004). Accordingly, the Government would not be prejudiced by the Court's granting of Claimant's motion. *United States v. All Assets Held at Bank Julius Baer & Co.*, 228 F. Supp. 3d 118, 126 (D.D.C. 2017) (holding that the court was persuaded that it should excuse claimant's failure to file an answer to the amended complaint in the case because that failure has not at all prejudiced the United States).

Finally, as this court has previously noted, "[t]he purpose of the time restriction for the filing of verified claims in such actions is to force claimants to come forward as soon as possible after forfeiture proceedings have been initiated so that all interested parties can be heard and the dispute resolved without delay." *$83,686.00*, 498 F. Supp. 2d at 24 (internal citations omitted). Similar to this court's decision in *$83,686.00,* this purpose is not thwarted where the balance of the foregoing discretionary factors clearly tilts in favor of the Claimant, especially since here: (1) the government encouraged the Claimant's delay; (2) the Claimant has acted in good faith in petitioning this court for an enlargement of time as soon as it became aware of the filing of the

civil action; (3) the Government has been advised of Claimant's interest in the defendant property prior to filing its verified complaint; and (4) the Government has not provided any credible reason for why it would be prejudiced by allowing the late filing.

## CONCLUSION

The Court is respectfully requested to grant Claimant's Motion to Extend Time and For Leave to File a Verified Claim.  For the foregoing reasons and those set forth in Claimant's Motion to Extend Time and for Leave, this case is precisely the type where adjudication of the claims should focus squarely on "the merits rather than on the basis of formalities." *$83,686.00*, 498 F. Supp. 2d at 25.

Respectfully submitted this 18th day of October, 2018

Respectfully submitted,

/s/ Erich C. Ferrari, Esq.

Erich C. Ferrari, Esq.
Ferrari & Associates, P.C.
1455 Pennsylvania Ave., NW
Suite 400
Washington, D.C. 20004
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email: ferrari@falawpc.com
DC Bar No. 978253

*Attorney for Claimant*
*AJC Trading FZC*