**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>                                                   )<br>                    Plaintiff,          )<br>           v.                                  )<br>                                                   )   Civil Action No. 18-750 (RBW)<br> THREE SUMS TOTALING $241,386.58  )<br> IN SEIZED UNITED STATES    )<br> CURRENCY,                             )<br>                                                   )<br>                    Defendants <u>in rem</u>.  )<br>                                                   ) | |

## ORDER

The plaintiff, the United States of America, brings this civil forfeiture action "against United States currency involved in and traceable to violations of the International Emergency Economic Powers Act of 1977 ('IEEPA'), 50 U.S.C. §§ 1701–1706 [(2018)], as well as the Money Laundering Control Act of 1986, 18 U.S.C. §§ 1956(a)(2)(A) and 1956(h) [(2018)]," alleging that "[t]hese funds are subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A), (C), and 984." Verified Complaint for Forfeiture <u>In Rem</u> ("Compl." or the "Complaint") ¶ 1. Currently pending before the Court is Claimant AJC Trading FZC Motion to Extend Time and for Leave to File Verified Claim ("Claimant's Mot."), which requests an extension of time for AJC Trading FZC (the "claimant") to file a verified claim to "three separate funds transfers seized by [United States] law enforcement" totaling $241,386.58 (the "defendant property") pursuant to Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Rule G"). Claimant's Memorandum in Support of Motion for Leave to File Verified Claim ("Claimant's Mem.") at 1. Upon careful consideration of the parties'

submissions,[1] the Court concludes for the following reasons that it must grant the claimant's motion.

## I.     BACKGROUND

According to the United States, "[p]ursuant to seizure warrants issued by this Court, "the[] defendant[] [property] . . . w[as] seized in the Southern District of New York." Compl. ¶ 5. The defendant property consists of three sums of United States currency: (1) $45,645.59 ("Sum A"); (2) $174,949.58 ("Sum B"); and (3) $20,741.41 ("Sum C"). Id. ¶ 4. "On or about October 19, 2017, administrative forfeiture proceedings commenced against" the defendant property. Id. ¶ 6. On April 3, 2018, the United States filed its Complaint, seeking to "condemn and forfeit the [ ] defendant property to the use and benefit of the United States . . . in accordance with Rule G." Id. at 1. "On April 5, 2018, the [United States] sent a copy of the [ ] Complaint, arrest warrant in rem, and a notice of forfeiture, via Federal Express[,] to . . . an address for [the claimant] in Ghana, an address for [the claimant] in the United Arab Emirates, and two addresses in the United Arab Emirates for [the claimant's] bank[,] Dubai Islamic Bank." Pl.'s Opp'n at 2; see also id., Exhibit ("Ex.") 2 (FedEx International Air Waybills) at 1–3; Claimant's Mem. at 3. Additionally, on April 7, 2018, "[n]otice of [c]ivil [f]orfeiture was posted on an official government internet site (www.forfeiture.gov) for at least [thirty] consecutive days," Pl.'s Opp'n, Ex. 1 (Declaration of Publication) at 1, instructing that "[a]ny person claiming a legal interest in the[d]efendant [p]roperty must file a verified [c]laim with the [C]ourt within [sixty] days from the first day of publication (April 07, 2018)," id., Ex. 1 (Declaration of Publication) at 2.

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Government's Opposition to Potential Claimant AJC Trading FZC's Motion to Extend Time and for Leave to File a Verified Claim ("Pl.'s Opp'n") and (2) Claimant AJC Trading FZC's Reply to Government's Opposition to Claimant's Motion to Extend Time and for Leave to File Verified Claim ("Claimant's Reply").

On April 19 and 26, 2018, the United States' Federal Express packages that were sent to the claimant in Ghana and the United Arab Emirates were returned as undeliverable.  See id. at 2.  However, on April 8, 2018, the United States' Federal Express packages that were sent to the claimant's bank in the United Arab Emirates were delivered.  See id. at 3.  On April 24, 2018, the claimant's bank sent a copy of the contents of the Federal Express packages by electronic mail to two separate e-mail addresses for the claimant, see id.; see also Claimant's Mot., Ex. E (E-mail from Mohammed Shawar Khan to info@ajctrade.com and gm@ajctrade.com (Apr. 24, 2018)).  According to the claimant, "[i]t was not until June 7, 2018, when [the] [c]laimant's [United Kingdom] counsel first reviewed the April 24, 2018 e[-]mail correspondence from [the claimant's bank], that it discovered that S[um] C was seized and subject to the instant forfeiture in rem proceedings," Claimant's Mem. at 5, and that "[u]pon discovering that the defendant property was subject to the instant forfeiture in rem action, [ ] [United Kingdom] counsel immediately realized that engaging [United States] counsel would be necessary on how to proceed in this action," id. at 17.  The claimant's United Kingdom counsel thereafter "travel[ed] to the United States to meet with [ ] [United States] counsel in late June 2018" and "gather[ed] and provid[ed] relevant documents."  Id. at 18.  According to the United States, the "[c]laimant waited until September 4, 2018, to communicate with the [ ] [United States] regarding its potential interest" in the defendant property.  Pl.'s Opp'n at 6.  On September 27, 2018, the claimant filed its motion requesting (1) an extension of time to file its verified claim and (2) leave to file its verified claim, see Claimant's Mot. at 1, which is the subject of this Order.

## II.     DISCUSSION

Rule G "governs a forfeiture action in rem arising from a federal statute."  Supp. R. G(1).  Rule G provides that "[t]he government must send notice of the action and a copy of the

complaint to any person who reasonably appears to be a potential claimant on the facts known to the government." Supp. R. G(4)(b)(i).  If the United States' notice is published and direct notice was sent to the claimant or the claimant's attorney, "the claim must be filed [ ] by the time stated in a direct notice sent under Rule G(4)(b)." Supp. R. G(5)(a)(ii)(A).  If the United States' notice is published but "direct notice was not sent to the claimant or the claimant's attorney, [the claim must be filed] no later than [thirty] days after final publication of newspaper notice or legal notice under Rule G(4)(a) or no later than [sixty] days after the first day of publication on an official internet government forfeiture site." Supp. R. G(5)(a)(ii)(B).  Although some courts demand strict compliance with the procedural requirements of Rule G, "[i]n stark contrast to the strict-compliance approach, numerous courts interpret pleadings and procedural practices under the Supplemental Rules liberally enough to allow for an appropriate degree of discretion in cases where the underlying goals of Rule C(6)[2] are not frustrated to ensure that courts decide controversies on the merits." United States v. Funds from Prudential Secs., 300 F. Supp. 2d 99, 104 (D.D.C. 2004) (internal quotation marks omitted); see United States v. $125,938.62, 370 F.3d 1325, 1329 (11th Cir. 2004) (per curiam) ("[T]he court may exercise its discretion by extending the time for the filing of a verified claim.").

The claimant argues that the Court should excuse the claimant's late filing of its verified claim because (1) the United States "failed to provide direct notice of the forfeiture in rem action to [the] [c]laimant," Claimant's Mem. at 8; (2) the "[c]laimant did not have actual notice of the instant forfeiture in rem action until June 7, 2018," id. at 13; (3) the United States' "failure to provide requisite notice of this action encouraged a delay in [the] [c]laimant's timely filing of a

---

[2] "Case law pre-dating the 2006 adoption of [ ] Rule G often refers to the procedural requirements in [ ] Rule C(6), 'which governed claim procedure prior to [ ] Rule G's adoption.'" United States v. 2007 Chrysler 300 Touring VIN:2C3KA53G27H883668, No. CIV 10-0246 JB WDS, 2011 WL 1119701, at *3 n.1 (D.N.M. Mar. 10, 2011) (quoting United States v. One Men's Rolex Pearl Master Watch, 357 F. App'x 624, 626 n.2 (6th Cir. 2009)).

verified claim in the defendant property," id. at 14; (4) the claimant "clearly attempt[ed] to inform the [United States] of its interest in the defendant property," id. at 16; (5) the claimant's "assertion of its interest in the defendant property would not substantially impact [the United States'] posture in this action or unduly prejudice [the United States]," id. at 17; and (6) the claimant made "good faith attempts to assert its claims in the defendant property," id. at 18.  The United States responds that (1) "[t]he [c]laimant had actual notice even under the narrowest reading of the actual notice exception to the notice requirement[,] [y]et the [ ] claimant chose not to act until well past the statutory deadline," Pl.'s Opp'n at 7 (citation omitted), and (2) "[t]he [ ] [c]laimant's prolonged delay in filing its claim is prejudicial to the [United States] as this [ ] Complaint has been docketed for a substantial period of time," id. at 9.

"[C]ourts have identified certain discretionary factors that may be considered in determining whether an untimely claim should constitute an absolute bar to a claimant's ability to contest a forfeiture in a particular case."  United States v. $83,686.00 in U.S. Currency Seized from Suntrust Account No. 1000018120112, 498 F. Supp. 2d 21, 24 (D.D.C. 2007) (Walton, J.). These factors include

> the time at which the claimant became aware of the seizure; whether the government encouraged the delay; the reasons proffered for the delay; whether the claimant has advised the [C]ourt and the government of [its] interest in the [d]efendant [p]roperty before the claim deadline; whether the government would be prejudiced by allowing the late filing; . . . and whether the claimant timely petitioned for an enlargement of time.

Id. (first, third, fourth, and fifth alterations in original) (quoting United States v. One 1990 Mercedes Benz 300CE, 926 F. Supp. 1, 4 (D.D.C. 1996)).  "[O]ther relevant factors include, inter alia, whether the claimant was properly served and whether the claimant acted in good faith."  Id.

Here, the Court finds that "the balance of these discretionary factors [ ] tilts in favor of the claimant." Id.  On the one hand, the Court concludes that the United States did not, as the claimant suggests, see Claimant's Mem. at 14, encourage the delay.  Indeed, the United States attempted to provide the claimant notice when it sent copies of the Complaint, the arrest warrant, and the notice of forfeiture to four separate addresses for the claimant.  See Pl.'s Opp'n at 2; id., Ex. 2 (FedEx International Air Waybills); see also United States v. $1,071,251.44 of Funds Associated with Mingzheng Int'l Trading Ltd., 324 F. Supp. 3d 38, 47 (D.D.C. 2018) ("Reasonable notice . . . requires that the government attempt to provide actual notice; it does not require that the government demonstrate that it was successful in providing actual notice." (alteration in original) (emphasis added) (quoting Mesa Valderrama v. United States, 417 F.3d 1189, 1197 (11th Cir. 2005))).  Moreover, on April 7, 2018, the United States posted the notice of forfeiture on an official government forfeiture website.  See Pl.'s Opp'n, Ex. 1 (Declaration of Publication) at 1.  Therefore, even assuming that the claimant did not receive direct notice of the forfeiture action, the deadline for filing the verified claim was June 7, 2018, sixty days after the notice of forfeiture was posted on an official internet government forfeiture site, compare Supp. R. G(5)(ii)(B) (instructing that if "direct notice was not sent to the claimant or the claimant's attorney, [the claim must be filed] . . . no later than [sixty] days after the first day of publication on an official internet government forfeiture site"), with Pl.'s Opp'n, Ex. 1 (Declaration of Publication) at 1 ("Notice of Civil Forfeiture was posted on an official government internet site (www.forfeiture.gov) for at least [thirty] consecutive days, beginning on April 07, 2018."), yet the "[c]laimant waited until September 4, 2018, to communicate with the [United States] regarding its potential interest," Pl.'s Opp'n at 6, and did not move for an extension of time until September 27, 2018, see Claimant's Mot. at 1.

However, on the other hand, the Court concludes that the United States will suffer no prejudice by the claimant's approximately three-month filing delay, see United States v. $229.590.00 in U.S. Currency Seized from a Safe in the Home of Dallas Cty. Comm'r Price, No. 3:12-CV-0893-D, 2013 WL 625742, at *3 (N.D. Tex. Feb. 20, 2013) (finding it "difficult to conclude that [the claimant] actually burdened the government to the extent alleged" where the claimant filed his answer to the verified complaint approximately three months after the deadline, reasoning that "[i]n the scheme of a civil lawsuit, this presents, at worst, a modest increase in the length of the litigation"); see also $125,983.62, 370 F.3d at 1130 ("hold[ing] that the district court abused its discretion in disallowing the [s]econd [a]mended [v]erified [c]laim" on timeliness grounds, where the claim was filed approximately two months after the government filed its complaint for forfeiture in rem), particularly when the United States was aware that the claimant was a potential claimant long before the claimant filed its motion for an extension of time, see Compl. ¶¶ 21–23 (identifying the claimant by name); Claimant's Mem. at 14 ("[The] [c]laimant [was] reasonably identifiable as a potential claimant in the defendant property as the originating party of S[um] A and S[um] B, and as the intended beneficiary of S[um] C.  This information is clearly set forth in the originating wire transfer receipts, as well as SWIFT payment messages, and is acknowledged in the [ ] Complaint." (citing Compl. ¶¶ 29, 33, 27)); see also $229.590.00 in U.S. Currency, 2013 WL 625742, at *3 ("[T]he [C]ourt considers the danger of prejudice to the government[] . . . to be slight.  This is not a case in which an unknown, unanticipated claimant has come out of the woodwork after the time for filing claims and answers has elapsed, thereby disrupting the normal course and progress of the proceedings.  The government was well aware before it filed suit that [the claimant] was a potential claimant.").

Moreover, because the United States has not demonstrated any tangible prejudice resulting from the claimant's delay in filing, the Court is unwilling to punish the claimant for its United Kingdom's counsel's apparent ignorance of United States forfeiture law, see $125,938.62, 370 F.3d at 1329 ("The [ ] [C]ourt should be wary to not confer the sins of the attorney unto the claimant in a civil forfeiture case, especially when the prejudice to the government, if any, is slight."), particularly given the size of the funds at issue, see id. at 1330 (concluding that an extension of time to file a second amended verified claim was warranted where "[p]rejudice to the government for allowing the extension [was] minimal" and "the amount at issue [was] substantial"); United States v. U.S. Currency, in the Amount of $103,387.27, 863 F.2d 555, 563 (7th Cir. 1988) ("Where the claimants have made a good-faith effort to file a claim and where the government can show absolutely no prejudice by the granting of an extension of time, we think it an abuse of discretion to deny an extension of time to amend a claim of ownership. This is especially true in a case where the defect is technical, where it was made by the attorney and not the claimants, and where the amount of currency is so large." (citations omitted)).

"Thus, given the well-settled 'jurisdictional preference . . . for [the] adjudication [of claims] on the merits rather than on the basis of formalities,' the Court concludes that it is in the interests of justice not to treat the claimant's failure to timely file [its] verified . . . [claim] as a bar to [its] challenge of the [United States'] in rem forfeiture action." $83,686.00 in U.S. Currency, 498 F. Supp. 2d at 25 (first, second, and third alterations in original) (citation omitted) (quoting Ciralsky v. Cent. Intelligence Agency, 355 F.3d 661, 674 (D.C. Cir. 2004)). Accordingly, it is hereby

**ORDERED** that Claimant AJC Trading FZC Motion to Extend Time and for Leave to File Verified Claim, ECF No. 5, is **GRANTED**. It is further

**ORDERED** that AJC Trading FZC's Verified Claim and Statement of Interest in Defendant Property, ECF No. 5-15, and Verification, ECF No. 5-16, are **ACCEPTED AS FILED**, and the Clerk of the Court shall file them as a separate entry on the docket. It is further

**ORDERED** that the claimant shall answer or otherwise respond to the Complaint on or before September 17, 2019.

**SO ORDERED** this 3rd day of September, 2019.

REGGIE B. WALTON
United States District Judge