UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 18-750 (RBW) |
| THREE SUMS TOTALING $241,386.58 IN SEIZED UNITED STATES CURRENCY, | ) ) ) ) ) | |
| Defendants in rem. | ) ) | |

**MEMORANDUM OPINION**

The plaintiff, the United States of America (the "government"), brings this civil forfeiture action "against United States currency involved in and traceable to violations of the International Emergency Economic Powers Act of 1977 [(the 'Act')], 50 U.S.C. §§ 1701–1706, [and] the Money Laundering Control Act of 1986, 18 U.S.C. §§ 1956(a)(2)(A) and 1956(h)," alleging that "[t]hese funds are subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A), (C), and 984." Verified Complaint for Forfeiture in Rem ("Compl." or the "Complaint") ¶ 1, ECF No. 1. Contesting this action is AJC Trading FZC (the "claimant"). Currently pending before the Court is Claimant AJC Trading FZC's Motion to Dismiss the Verified Complaint for Forfeiture In Rem (the "claimant's motion to dismiss" or "Claimant's Mot."), ECF No. 12, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it must deny the claimant's motion.

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum of Law in Support of AJC Trading FZC's Motion to Dismiss the Verified Complaint for Forfeiture In Rem ("Claimant's Mem."), ECF No. 12-1; (2) the Government's Opposition to Claimant AJC

(continued . . .)

## I.    BACKGROUND

The following funds constitute the defendants <u>in rem</u>:

a.  $45,695.59[ ] in United States currency, formerly located at Deutsche Bank Trust Company Americas, seized on or about August 21, 2017, and assigned an asset identification number ending in 4160 by the [United States] Department of Justice ("SUM A");

b.  $174,949.58 in United States currency, formerly located at Bank of New York Mellon, seized on or about August 29, 2017, and assigned an asset identification number ending in 5258 by the [United States] Department of Justice ("SUM B"); [and]

c.  $20,741.41 in United States currency, formerly located at Citibank N.A., seized on or about August 29, 2017, and assigned an asset identification number ending in 7708 by the [United States] Department of Justice ("SUM C")[.]

<u>Id.</u> ¶ 4.

On May 27, 2009, the United States Department of the Treasury's Office of Foreign Assets Control (the "OFAC") "designated Kassim Tajideen [('Tajideen')] as a[ Specially Designated Global Terrorist ('SDGT')] pursuant to [the Act] and Executive Order 13224[2] based on his significant financial support of the Hizbollah terrorist organization."[3]  Compl. ¶ 14. "Also on December 9, 2010, OFAC designated, among others, . . . six companies as SDGTs . . . pursuant to [the Act] and Executive Order 13224

---

(. . . continued)
Trading FZC's Motion to Dismiss ("Gov't's Opp'n"), ECF No. 13; and (3) the Claimant AJC Trading FZC's Reply Memorandum in Support of Its Motion to Dismiss ("Claimant's Reply"), ECF No. 14.

[2] Executive Order No. 13,224, 66 Fed.Reg. 49,079, "describe[s] the types of conduct that could subject an entity to blocking of its assets, such as providing financial support to terrorists . . . and authorized the designat[ion of] additional entities . . . determine[d to be] within the purview of the Order." <u>Islamic Am. Relief Agency v. Gonzales</u>, 477 F.3d 728, 734–35 (D.C. Cir. 2007).

[3] On December 9, 2010, the OFAC "designated [ ] Tajideen's brother, Husayn Tajideen[,] as an SDGT for the same reasons[, and a]t all times since their respective designation dates until today, both individuals have remained SDGTs." Compl. ¶ 14.

. . . [,] after being identified as being owned by, controlled by, or operated for the benefit of, the OFAC-designated Tajideen brothers." Id. ¶ 15. "At all times since their designation date until today, all of these entities have remained SDGTs." Id.

## A. The Criminal Case Against Tajideen

The criminal activity of Tajideen, his designation as an SDGT, and the forfeitures involving Tajideen's assets are not new to this Court. On March 7, 2017, a grand jury issued an Indictment charging Tajideen and a codefendant with one count of conspiracy to violate the Act and the Global Terrorism Sanctions Regulations, 31 C.F.R. pt. 594, as well as multiple counts of unlawful transactions with an SGDT and one count of conspiracy to commit money laundering. See generally Indictment, United States v. Tajideen, Crim. Action No. 17-46 (D.D.C. Mar. 7, 2017) (the "Indictment"), ECF No. 1. "[O]n March 25, 2017, agents of [United States] Drug Enforcement Agency transported [Tajideen] to the United States," in order to execute Tajideen's extradition. Defendant Kassim Tajideen's Motion to Dismiss No. 7 As to Superseding Indictment at 5, United States v. Tajideen, Crim. Action No. 17-46 (D.D.C. Mar. 16, 2018), ECF No. 116. On February 15, 2018, the grand jury issued a Superseding Indictment which instead charged Tajideen with one count of conspiracy to conduct unlawful transactions and cause United States persons to conduct unlawful transactions with an SGDT and to defraud the United States by dishonest means, as well as involvement in the unlawful transactions and money laundering counts. See generally Superseding Indictment, United States v. Tajideen, Crim. Action No. 17-46 (D.D.C. Feb. 15, 2018) (the "Superseding Indictment"), ECF No. 89. Both the original Indictment and the Superseding Indictment included forfeiture counts. See Indictment at 26; Superseding Indictment at 25. As this Court previously explained:

> In short, the defendant is charged with allegedly "continu[ing] to conduct business with [United States] entities through a large network of businesses with ever-

3

> changing names run by a relatively small group of personnel, effectively hiding his own involvement in the transactions," despite his designation as an SDGT by the [OFAC].

United States v. Tajideen, No. CR 17-46, 2018 WL 1342475, at *1 (D.D.C. Mar. 15, 2018) (first and second alterations in original, aff'd, 724 F. App'x 6 (D.C. Cir. 2018).

Tajideen pleaded guilty to conspiracy to commit money laundering and was sentenced to sixty months of imprisonment, with all other counts being "dismissed on the motion of the United States."[4]  Judgment at 1–2, United States v. Tajideen, Crim. Action No. 17-46 (D.D.C. Aug. 12, 2019) (the "Judgment"), ECF No. 251.  Tajideen was also required to forfeit his interest in "a money judgment of $50,000,000.00" to the United States.  Id. at 6.  According to the Statement of Facts tendered as part of Tajideen's guilty plea, Tajideen

> acknowledge[d] that . . . his [SDGT] designation by [the] OFAC, and the prohibitions on transactions attendant to it under the [Act] and other regulations, were in full force during the period of the conspiracy period . . . , and, that other laws made it unlawful for any person to violate, attempt to violate, conspire to violate, or cause a violation of these prohibitions.

Statement of Facts at 2, United States v. Tajideen, Crim. Action No. 17-46 (RBW) (D.D.C. Dec. 6, 2018) (the "Statement of Facts"), ECF No. 214.  Furthermore, the Statement of Facts that Tajideen acknowledged was accurate when he entered his guilty plea, indicates that he and his co-conspirators engaged in a plethora of transactions, see id. at 3–4, including wire transfers—at least similar to those alleged in this forfeiture action—of "as much as $1 billion through the United States financial system from places outside the United States," Id. at 4

---

[4] On June 4, 2020, the Court amended its Judgment to modify Tajideen's prison sentence to the time he had already served.  Amended Judgment, United States v. Tajideen, Crim. Action No. 17-46 (D.D.C. Jun. 4, 2020), ECF No. 266.

### B. The Government's Forfeiture Allegations

The government alleges that the claimant in this case—AJC Trading FZC—is "an entity based in Tema, Ghana[,] and Dubai, United Arab Emirates[,] owned by, controlled by, or operated for the benefit of Tajideen and" one of those six companies being designated as an SDGT—Ovlas Trading SA ("Ovlas"). Compl. ¶ 21. The claimant is "part of a portfolio of [eleven] Ghana-based companies and tradenames operated by Ali Jaber for the benefit of [ ] Tajideen and Ovlas[,] " id. ¶ 22, and "shares resources, finances, personnel, and other interests with Ovlas" and the portfolio of the Ghana-based entities, id. ¶ 23. Its "daily operations are managed by [individuals known as] Ali Jaber and Hussein Jaber." See id. ¶ 21.

The defendant funds involved in this case were seized "[p]ursuant to seizure warrants issued by this Court . . . and then transferred to the possession and custody of the United States Marshals Service, where they remain." Id. ¶ 5. The government makes three claims as grounds for its forfeiture request, which are based on the traceability of the seized defendant funds to (1) specified violations under the Act, see id. ¶¶ 42–46; (2) a conspiracy to violate the Act, see id. ¶¶ 47–51, and (3) international money laundering, see id. ¶¶ 52–56. "SUM A, SUM B, and SUM C were each seized while involved in interbank transfers that transited through the United States." Id. ¶ 28. As to SUM A and SUM B, the government alleges that the claimant "attempted to wire transfer" those defendant funds, and as to SUM C, the government alleges that the claimant maintained the beneficiary account intended to receive those defendant funds. Id. ¶¶ 29–41. At no time "did any related parties to the transaction[s] involving" SUM A, SUM B, and SUM C " have the proper license from [the] OFAC to conduct business for the benefit of [ ] Tajideen or Ovlas [ ]." Id. ¶¶ 30, 34, 38.

### C. The Claimant's Entry into this Case

On September 27, 2018, the claimant filed its first motion in this case, which sought leave for an extension of time to file a verified claim in this matter. See generally Claimant AJC Trading FZC Motion to Extend Time and for Leave to File Verified Claim, ECF No. 5. The Court granted the claimant's motion, accepted as filed the claimant's Verified Claim, and ordered the claimant to "answer or otherwise respond to the Complaint on or before September 17, 2019." Order at 9 (Sept. 3, 2019), ECF No. 11. On September 17, 2019, the claimant filed its motion to dismiss, which is the subject of this memorandum opinion.

## II.   STANDARD OF REVIEW

Pleadings in forfeiture actions proceed pursuant to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules"), as well as the Federal Rules of Civil Procedure, to the extent they are not "inconsistent with [the] Supplemental Rules." See Supplemental Rule ("Supp. R.") A(2).

### A. Rule 12(b)(6) of the Federal Rules of Civil Procedure

A Rule 12(b)(6) motion tests whether a complaint "state[s] a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the [C]ourt to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

In evaluating a motion to dismiss under Rule 12(b)(6), "the Court must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be

derived from the facts alleged.'" Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)). While the Court must "assume the[ ] veracity" of any "well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555). Also, the Court need not "accept legal conclusions cast as factual allegations" or "inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint[.]" Hettinga, 677 F.3d at 476. And, the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice." Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

**B. Supplemental Rule G**

Supplemental Rule G requires that "the complaint must be verified, state the grounds for jurisdiction, describe the property 'with reasonable particularity,' identify the statute under which the action is brought, and 'state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.'" United States v. $1,071,251.44 of Funds Associated with Mingzheng Int'l Trading Ltd., No. 17-CV-1166-KBJ-GMH, 2018 WL 3949962, at *4 (D.D.C. June 29, 2018), report and recommendation adopted, 324 F. Supp. 3d 38 (D.D.C. 2018) (quoting Supp. R. G(2)). A complaint in rem must also "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Supp. R. E(2)(a). As always,

7

"[t]hreadbare recitals of the elements of a [forfeiture] cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555. However, the court may not dismiss the complaint solely because the government did not have "adequate evidence at the time the complaint was filed to establish the forfeitability of the [defendant] property." Supp. R. G(8)(b(ii).

### III.   ANALYSIS

The claimant contends that the government's Complaint is insufficient in several respects.  First, the claimant argues that "while the [g]overnment's Complaint asserts that the defendant property is traceable to violations [of the Act], it does not meet the standards for pleading that claim" because the Complaint "fails to state any specific facts in support of [the] allegation" that the claimant is owned by, controlled by, or operated for the benefit of alleged SDGTs.  Claimant's Mem. at 6.  As part of this argument, the claimant asserts that the Complaint fails to to (1) plead "facts concerning the alleged involvement of blocked persons . . . except [those made] in a conclusory manner[,]" id. at 9, and (2) "allege that any violation of [the Act] was both knowing and willful," id. at 10.  In response, the government "concedes that it has not put forth a complex theory or extraordinarily detailed set of facts in the [ ] Complaint[,]" but argues that "the simplicity and straightforward nature of the [government's] allegations should not be confused with insufficiency."  Gov't's Opp'n at 5.  According to the government, "[a] plain reading of . . . the [ ] Complaint make[s] clear that the [government] intends to demonstrate at trial that [the claimant] is part of a portfolio of entities owned at least in part by SDGT [ ] Tajideen, and operated jointly with SDGT Ovlas [ ] and other Tajideen entities." Id.  While the claimant insists that this reading constitutes, at best, a legal conclusion, see Claimant's Reply at 3, the Court ultimately agrees with the government that "[t]he alleged sharing of resources,

8

finances, and personnel, is more than enough to prove a beneficial 'interest of any nature whatsoever, direct or indirect' to SDGTs [ ] Tajideen and Ovlas . . . [,]" see Gov't's Opp'n at 5 (quoting 31 C.F.R. Part 594.306).

Contrary to the claimant's position, the Complaint satisfies the applicable standard by setting forth allegations which adequately present the government's theory of forfeiture based on ties between the defendant funds, certain entities—which include the claimant—and SDGTs. A complaint facing the challenge claimant presents in this case, suffices by "simply alleg[ing] enough facts so that the claimant may understand the theory of forfeiture, file a responsive pleading, and undertake an adequate investigation." United States v. One Gulfstream G-V Jet Aircraft, 941 F. Supp. 2d 1, 14 (D.D.C. 2013). Indeed, the government need only present sufficient facts to "support a reasonable belief that it would meet its burden of proof at trial[,]" $1,071,251.44 of Funds, No. 17-CV-1166-KBJ-GMH, 2018 WL 3949962, at *8, as the sufficiency standard "is not particularly onerous[,]" id. at *9.

The standard is satisfied here because the government alleges that "[the claimant] is an entity based in Tema, Ghana[,] and Dubai, United Arab Emirates[,] owned by, controlled by, or operated for the benefit of, [ ] Tajideen and Ovlas . . . ." The government further alleges that Ovlas, like Tajideen, is an SDGT and "its daily operations are managed by [other individuals known as] Ali Jaber and Hussein Jaber." Compl. ¶ 21; see id. ¶¶ 14, 15. Moreover, the Complaint indicates that the claimant is one of a "portfolio" of entities working on behalf of these identified SDGTs. Id. ¶ 22. The Complaint also asserts that the claimant purportedly "shares resources, finances, personnel, and other interests with" those suspected entities that are SDGTs or at least have alleged SDGT ties. Id. ¶ 23. These allegations—though not a "complex theory or extraordinarily detailed set of facts," as the government concedes, Gov't's Opp'n at

9

5—are not impermissibly conclusory under the applicable standard. The allegations set forth above (1) directly advise the claimant as to "the theory of forfeiture" (2) enable the claimant to "file a responsive pleading," and (3) empower the claimant with the ability to "undertake an adequate investigation." See United States v. $37,564,565.25 in Acct. No. XXXXXXXXXXX at Morgan Stanley, in Name of Anicorn, LLC, No. 18-CV-2795-CKK, 2019 WL 5269073, at *2 (D.D.C. Oct. 17, 2019).[5]

The claimant also argues that the Complaint insufficiently pleads for the forfeiture of proceeds traceable to a conspiracy and the forfeiture of proceeds traceable to international money laundering. See Claimant's Mem. at 11–12. The government responds that these arguments "improperly conflate the requirements to prove a criminal case with the requirements of a civil forfeiture." Gov't's Mem. at 7. The Court agrees with the government.

A forfeiture complaint alleging conspiracy is "sufficiently pled" where it "identifies the alleged conspirators," "provides a timeline," "and describes the basic" scheme. See

---

[5] The claimant's reliance on the OFAC's Fifty Percent Rule, see Claimant's Mem. at 9 (arguing that under the Fifty Percent Rule, "an entity that is operated or controlled—but not owned [fifty] percent or more—by one or more blocked persons is not automatically considered a blocked person"), does not pertain to the Court's analysis at this stage of the proceedings. Regarding the Fifty Percent Rule, as the government notes, "the 'rule' is a guidance tool for assisting the public to identify designated entities 'regardless of whether the entity itself is listed in the Annex to Executive Order 13224, as amended, or designated pursuant to § 594.201(a)[.]'" Gov't's Opp'n at 5, n. 2 (quoting 31 C.F.R. Part 594.412). In any event, regardless of the applicability of the Fifty Percent Rule, for the reasons stated above, the Court is satisfied that the allegations implicating the claimant as acting in concert with SDGTs demonstrate the sufficiency of the Complaint. Furthermore, the Complaint alleges, see Compl. ¶¶ 11, 29–41, and the applicable regulations proscribe, "direct or indirect" benefits being provided to blocked persons, see 31 C.F.R. Part 594.

Additionally, the claimant's references to the intent element of the underlying criminal violation, id. at 10 (arguing that "the [g]overnment must allege that any violation of [the Act] was both knowing and willful"), is likewise irrelevant to the Court's current considerations. The claimant overlooks that forfeiture proceedings are directed against the property at issue, and proof of criminal culpability is not a prerequisite. See United States v. Real Prop. Identified as: Parcel 03179-005R, 287 F. Supp. 2d 45, 62 (D.D.C. 2003) (citing United States v. One "Piper" Aztec "F" De Luxe Model 250 23 Aircraft Bearing Serial No. 27–7654057, 321 F.3d 355, 360 (3d Cir. 2003); United States v. All Right, Title & Interest in Real Property & Building Known as 303 West 116th Street, New York, New York, 901 F.2d 288, 292 (2d Cir. 1990)) ("[A] criminal conviction is not a prerequisite for civil forfeiture."). In any event, because the claimant's criminal intent argument and its Fifty Percent Rule do not detract from the Complaint's allegations that "support a reasonable belief that [the government can] meet its burden of proof at trial," see $1,071,251.44 of Funds, 2018 WL 3949962, at *8, neither argument disturbs the Court's conclusion on the sufficiency of the Complaint.

10

$37,564,565.25, 2019 WL 5269073, at *8.  Furthermore, the government "does not need to allege facts that demonstrate an explicit agreement; rather '[p]roof of a tacit, as opposed to explicit, understanding is sufficient to show agreement.'"  United States v. Sum of $70,990,605, 4 F. Supp. 3d 189, 199–200 (D.D.C. 2014) (alterations in original) (quoting Halberstam v. Welch, 705 F.2d 472, 477 (D.C. Cir. 1983)).  Here, the Complaint identifies a pool of alleged conspirators—specifically, the "portfolio of Ghana-based companies and tradenames operated by Ali Jaber for the benefit of [ ] Tajideen and Ovlas Trading SA," including the claimant.  Compl. ¶ 22.  The Complaint also identifies an alleged scheme from August 2017 involving the defendant funds that amounted to a violation of the Act commited by these alleged co-conspirators.  See Compl. ¶¶ 14–15 (describing the SDGT designations), 21–23 (implicating claimants implication in a group of entities engaging with SDGTs), 24–41 (revealing transfers of defendant funds in alleged violations of the Act).  What is alleged in the Complaint is sufficient "to support a reasonable belief that the government will be able to meet its burden of proof at trial[]" regarding the alleged traceability of the defendant funds to a conspiracy to violate the Act.  See $1,071,251.44 of Funds, 2018 WL 3949962, at *4.

The same is true as to the government's third claim involving traceability of the defendant funds to money laundering.  The claimant incorrectly insists that "the [t]hird [c]laim for [f]orfeiture of property traceable to international money laundering must also be dismissed to the extent it relies on a[] [ ] violation [of the Act] as the predicate crime because the Complaint fails to allege a violation of the [the Act]."  Claimant's Mem. at 13.  Even assuming that it would be necessary for a predicate violation of the Act to be established for the money laundering claim to be proven, the Court has already concluded that the Complaint does sufficiently plead a violation of the Act.  Furthermore, the claimant's assertion that "each defendant property

11

transaction cannot simultaneously be both the alleged [ ] violation [of the Act] and the alleged money laundering violation," id., misstates the law as construed by this Court in the underlying matter for this case, see United States v. Tajideen, 319 F.Supp.3d 445, 467-69 (D.D.C. 2018) (Walton, J.) ("[T]he Court adopts [the Second Circuit's] conclusion that, contrary to the defendant's position, § 1956(a)(2) does not require a distinct act of money laundering separate and apart from the transactions that allegedly violated [the Act] and constituted the [specified unlawful activity] for money laundering." (internal quotation marks omitted)).

### IV.   CONCLUSION

For the foregoing reasons, the Court concludes that the allegations in the Complaint are sufficient to plead the government's forfeiture claims and the claimant's arguments for dismissal must be rejected.  Therefore, the Court denies the claimant's motion to dismiss.

**SO ORDERED** this 3rd day of June, 2021.[6]

REGGIE B. WALTON<br>
United States District Judge

---

[6] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.